# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02030-COA

STEDMAN D. GILMORE A/K/A STEDMAN DAVID GILMORE A/K/A DAVID GILMORE A/K/A STEDMAN GILMORE         **APPELLANT**

v.

STATE OF MISSISSIPPI         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE M. MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING AND SENTENCED TO TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE AND $30 IN RESTITUTION |
| DISPOSITION: | AFFIRMED - 04/28/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1. Stedman Gilmore appeals his conviction in the Carroll County Circuit Court for one count of burglary of a dwelling and his sentence of twelve years in the custody of the Mississippi Department of Corrections (MDOC). Gilmore asks this Court to review the

circuit court's refusal of two jury instructions that he claims supported his theories of defense. We find that the circuit court did not abuse its discretion in refusing these instructions; therefore, we affirm Gilmore's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2. In the early morning hours of May 29, 2013, Katherine Armstrong was in her home in Vaiden, Mississippi, when she heard noises and saw lights outside of her bedroom window. Armstrong dialed 911, and while on the phone with the 911 dispatcher, she was able to identify, and relay the information of, the color and model of a car driving in front of her house, as well as a few characters from the car's license plate. Armstrong then inspected her front yard, where she discovered a shotgun that was not hers.

¶3. Carroll County Deputy Sheriff Ken Banks received the information about the car from the 911 dispatcher, and came upon a car matching the description and driving in the same direction as described.[1] According to Deputy Banks, it was "almost [3 a.m. in] a very rural area [where] you do [not] expect to see any traffic." Deputy Banks initiated a traffic stop after seeing the driver and front passenger not wearing seatbelts, and he ordered Gilmore, the car's driver, to exit the vehicle for safety reasons.[2] Upon a search of the car, Deputy Banks discovered flashlights and other "out of place all at one time" items such as arrows, a bow, a shotgun, and a gas can. Deputy Banks then went to interview Armstrong, where he found the shotgun in the yard. Deputy Banks asked Armstrong if there were any cabins close to her

---

[1] Deputy Banks was also a Carroll County constable.

[2] The other passengers were Varnell Brown, Donald Lofton, Demetrius Massey, and Jacardia Hill.

home; Armstrong explained there was a cabin slightly down the road. Deputy Banks located the cabin, which had a locked gate at the driveway, and he immediately spotted recent footprints, and an arrow matching the other arrows recovered from the car. Deputy Banks later testified that these footprints matched the shoes belonging to Gilmore. According to Deputy Banks, he "continued to follow the trail of footprints" toward the cabin, where he discovered more arrows in the yard. He also noticed a couple of open windows, enabling him to easily look into the cabin. He explained that on the inside of the cabin, "the couches were flipped over, that stuff was str[e]wn out, and it appeared to have been ransacked." Deputy Banks spoke with Ken McDougal, the cabin's owner, who confirmed the items recovered from the car matched the items stolen from the cabin.

¶4. Deputy Banks also interviewed Gilmore on two occasions: the first was later in the morning on May 29, 2013, and the second was June 3, 2013. In his first statement, Gilmore explained that he did not know anything about the burglary, but that he purchased the items from a local drug user. In his second statement, he admitted that he went to the cabin, but that he did not actually go inside the cabin and was more of a "lookout" for the other men.

¶5. Gilmore was indicted on October 8, 2013, on one count of burglary of a dwelling, and his jury trial on that count began on November 7, 2013. Deputy Banks, Armstrong, and McDougal testified to the events as outlined above. Additionally, Gilmore testified in his own defense. Gilmore explained that Donald Lofton and Varnell Brown called him, and asked him if he would come pick them up in exchange for some gas. Gilmore agreed and picked them up at the gate to McDougal's cabin, where Lofton gave him a gas can. Gilmore

3

placed the gas can in the trunk, and walked to the front of the car to charge his phone. He claims this was when the others loaded more items into the trunk of his car. Gilmore began driving away when Jacardia Hill asked to be let out at Armstrong's property. Gilmore obliged, thinking Hill was going to relieve himself. Gilmore also got out of the car at Armstrong's property and opened the trunk, where he claimed he discovered the other items. He threw a shotgun he found in the trunk into Armstrong's yard. Gilmore testified that he kept asking the other men what was going on, and they would not tell him. On direct examination, Gilmore explained that he did not go to McDougal's cabin and did not know the other men were going to steal items from the cabin. Further he did not help them plan or assist them in stealing items from the cabin.

¶6. After hearing the evidence, the jury convicted Gilmore as charged in the indictment. He was sentenced to serve twelve years in the custody of the MDOC, ordered to pay $30 in restitution to McDougal, and fined $1,000. Gilmore filed a motion for a new trial or judgment notwithstanding the verdict, which the circuit court denied. Gilmore filed his notice of appeal on October 20, 2013.

¶7. On appeal, Gilmore argues that the circuit court "erred in [refusing] defense jury instructions D-3 and D-4, which were accurate statements of the law and were supported by the evidence presented at trial." And "[d]enying these jury instructions deprived Gilmore of the right to have the jury instructed on his theory of defense."

**ANALYSIS**

¶8. Gilmore's appeal centers on the circuit court's refusal of his requested jury

4

instructions, D-3 and D-4. This Court employs the abuse-of-discretion standard when reviewing the trial court's giving or refusal of a jury instruction. *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012). The Mississippi Supreme Court has held that the "a defendant is entitled to have jury instructions given which present his theory of the case;" however, the trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Ladnier v. State*, 878 So. 2d 926, 931 (¶20) (Miss. 2004) (citation omitted). Further, a defendant is entitled to provide alternative and inconsistent theories of his defense, and the jury should receive instructions for those theories; however, there still must be a factual basis to give such instructions. *See Deloach v. State*, 977 So. 2d 400, 403 (¶¶12-13) (Miss. Ct. App. 2008) (citation omitted).

¶9.     Instruction D-3 provided:

> The [circuit c]ourt instructs the jury that if you find from the evidence presented that [(Gilmore)] did aid or assist any felon(s), knowing that the person(s) had committed a felony, with intent to enable the felon(s) to escape or to avoid arrest, trial, conviction[,] or punishment after the commission of the felony[,] then you should find him guilty of accessory after the fact.

According to Gilmore, this accessory-after-the-fact instruction supported his theory that while he was protecting his friends after the burglary, he had not actually participated in the crime. The circuit court refused this instruction because it could not "recall a bit of testimony that would indicate that he [(Gilmore)] was aware that a felony had taken place and that he was attempting to help [aid or assist] . . . knowing a felony had taken place." Further, according to the circuit court, Gilmore "would have had to have knowledge that they

5

[(Brown, Lofton, Massey, and Hill)] committed a felony before he could have been aiding and abetting or attempting to evade them after the fact[.]"

¶10.   While Gilmore made two prior conflicting statements about his involvement and knowledge of the events surrounding the burglary of McDougal's cabin, his testimony at trial was that he was already in jail when he finally learned what had happened and that he never went to the McDougal cabin, did not know the others stole items from the cabin, and he in no way helped "plan or assist them" that morning.  Gilmore's testimony was unwavering that he had no knowledge of what the others had done until they were already in jail; thus, he could not have aided or assisted them, with the knowledge that a felony had been committed, as instruction D-3 provides.  Additionally, we find no evidence that Gilmore's actions after the completion of the burglary were done with the "intent to enable the felon(s) to escape or to avoid arrest, trial, conviction, or punishment."  In fact, Gilmore testified that when his friends told him to drive another direction, he told them:

> I was like what, I ain't running.  I ain't do nothing.  So that's when I turned back around and went toward the way where [Deputy] Banks was coming, because we originally was going that way.  And [Deputy Banks later] said – he was like, if y'all would have kept going that way, then y'all would have escaped.  And I was like escape what?  I ain't trying to escape nothing.

As is clear, Gilmore's testimony was that he did not intend to help anyone escape or avoid arrest.  Therefore, we find that the circuit did not abuse its discretion in refusing this instruction.

¶11.   Moreover, Gilmore's indictment charged him with burglary of a dwelling; it did  not charge him with accessory after the fact, which is a lesser-related-offense instruction.  In the

6

recent case of *Hye v. State*, 2010-CT-01780-SCT, 2015 WL 474520, at *2-4 (¶¶4,9) (Miss. Feb. 5, 2015), the Mississippi Supreme Court found that "Mississippi's practice of instructing the jury on lesser nonincluded crimes [was] 'fundamentally unsound[,]'" and it overruled its prior cases, which held that "a criminal defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a continuing factual scenario giving rise to the charge laid in the indictment." Instead, "a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Id* at *1 (¶2). Thus, Gilmore was not entitled to the lesser-related-offense instruction on accessory after the fact.

¶12.   Instruction D-4 provided:

Evidence has been presented that [(Gilmore)] acted in ignorance or on mistake of fact. "Ignorance" or "Mistake of Fact" is a defense to the commission of a crime provided that:

1.   The mistaken belief is honestly held; and

2.   The belief is of such a nature that the conduct would have been lawful and proper, had the facts been as they were believed to be;

3.   The mistaken belief is not the result of the negligence or fault of [(Gilmore)].

If the State has failed to prove from the evidence in this case beyond a reasonable doubt that [(Gilmore)] acted with knowledge of the true fact, then you shall find [(Gilmore)] not guilty.

Gilmore claims that instruction D-4 should have been given because another theory of his defense was that he did not know his friends had committed a burglary when he picked them

7

up that night. In refusing this instruction, the circuit court found that another instruction properly laid out the elements that the State must prove beyond a reasonable doubt, and that the jury was informed that if the State failed to prove each element, it must acquit Gilmore.

¶13. The circuit court did not abuse its discretion by refusing instruction D-4. Gilmore was indicted for and convicted of burglary of a dwelling, and there was no evidence presented at trial as to how he may have "mistakenly" burglarized a dwelling. According to Gilmore's testimony, he never entered McDougal's property at all; his testimony was not that he mistakenly entered it or mistakenly took items. Given this testimony, we cannot find that there was an evidentiary basis to support the circuit court's giving of the instruction. Simply, this instruction has no proper application to the present facts and has no foundation in the evidence.

¶14. Therefore, we find that Gilmore's issues are without merit.

¶15. **THE JUDGMENT OF THE CARROLL COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE AND $30 IN RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CARROLL COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**