**STATE of Louisiana**

v.

**Francis X. ROSS, Jr.**

**NO. 2015–KA–1113**

Court of Appeal of Louisiana,
Fourth Circuit.

DECEMBER 21, 2016

---

14. 2016 WL 2855480 (E.D. La. May 16, 2016).

15. *Id.*

16. This finding pretermits any discussion on the specificity of the written notice.

Leon A. Cannizzaro, Jr., District Attorney, Donna Andrieu, Chief of Appeals, Mithun Kamath, Assistant District Attorneys, Parish of Orleans, 619 South White Street, New Orleans, LA 70119, COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Sherry Watters, Louisiana Appellate Project, P.O. Box 58769, New Orleans, LA 70158, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Paul A. Bonin, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins)

PAUL A. BONIN, JUDGE

Francis Ross is appealing his convictions for possession of carisoprodol and for possession of cocaine. These are his fourth and fifth felony convictions for violating the Controlled Dangerous Substances Law. All of his felony convictions were for simple possession of an illegal substance. Until his most recent convictions, Mr. Ross had always been sentenced to probation and in each instance had satisfactorily completed probation.

Now, however, after adjudication as a quadruple felony offender under the Habitual Offender Law and despite never having been incarcerated for any of his non-violent offenses, Mr. Ross has been sentenced to two concurrent terms of twenty years imprisonment at hard labor, which is to be served without the benefit of parole, probation, or suspension of sentence.

He argues on appeal that the trial judge erroneously admitted evidence of a misdemeanor offense of possession of marijuana and that the trial judge erroneously failed to declare a mistrial when the prosecutor in his opening statement violated her *in limine* ruling. We have reviewed the rulings under an |₂abuse-of-discretion standard and conclude that the trial judge did not abuse her discretion. Consequently, we affirm Mr. Ross' convictions.[1]

He further argues on appeal that the prosecution's delay in filing the multiple bill against him until after he was eligible for release from incarceration on the underlying sentences was illegal and, moreover, that the prosecution failed to prove the allegations of the multiple bill beyond a reasonable doubt. Again, we have reviewed these arguments under an abuse-of-discretion standard and have detected no misapplication of law or of fact. Accordingly, we conclude that the trial judge correctly determined that Mr. Ross was subject to sentencing as a fourth felony offender.

But Mr. Ross' final argument, the only one asserted by his appellate counsel rather than himself, is that the sentences imposed violate Louisiana's constitutional protection against excessive sentences. And on this point we agree that the two concurrent sentences exceed that which could be constitutionally imposed upon Mr.

Ross because such sentences are not meaningfully tailored to Mr. Ross' culpability, the gravity of his offenses, and the circumstances of this case, especially in the absence of any previous period of incarceration. Consequently, we vacate his sentences and remand to the sentencing judge for her to conduct an evidentiary hearing and impose lesser sentences which are not excessive.

We explain our decision in greater detail in the following Parts.

## |₃I

We first set out the relevant facts and procedural history. Briefly, Mr. Ross was pulled over in Orleans Parish for riding on a moped without a helmet. When officers discovered he had outstanding warrants in Jefferson Parish, they arrested him, searched his person, and discovered several controlled illicit substances—marijuana, carisoprodol (Soma), and cocaine. See *State v. Ross*, 13–0500 (La.App. 4 Cir. 3/26/14), 137 So.3d 759 ("*Ross I* ") for an in-depth discussion of the facts. The prosecution charged Mr. Ross in three counts by bill of information: in Count 1 with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1); in Count 2 with possession with intent to distribute alprazolam, a violation of La. R.S. 40:969(A)(1); and in Count 3 with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1). All three counts were subsequently amended to charge in Count 1, possession of marijuana, a violation of La. R.S. 40:966(E)(1); in Count 2, possession of carisoprodol (Soma), a violation of La. R.S. 40:969(C)(2); and in Count 3, possession of

---

1. We have examined the record, as we always do, for any errors patent and have not identified any. *See* La. C.Cr.P. art. 920(2).

cocaine, a violation of La. R.S. 40:967(C)(2).

Defendant pleaded not guilty to all counts at his June 20, 2012, arraignment. On January 7 and 9, 2013, defendant was tried by the court as to the misdemeanor Count 1 and by a six-person jury as to Counts 2 and 3. He was found guilty as charged on all counts. Subsequently, the trial judge denied defendant's motion for a new trial and sentenced him on Count 1 to six months in Orleans Parish Prison and on Counts 2 and 3, respectively, to three years imprisonment at hard labor, to run concurrently with all sentences in the instant case and any other sentence defendant was serving. Defendant was adjudicated a fourth-felony habitual offender as to Counts 2 and 3. The trial judge then vacated the original sentences imposed on those two counts and resentenced defendant to serve thirty years at hard labor on each count, without the benefit of parole, probation, or suspension of sentence, both sentences to run concurrently.

Mr. Ross appealed to this court. We affirmed his conviction as to Count 1, for possession of marijuana, but reversed the convictions as to Counts 2 and 3, for possession of carisoprodol and possession of cocaine, respectively (due to trial court error in denying defendant the right to backstrike) and remanded the case for a new trial. *See Ross I*, writ denied, 14–0886 (La. 11/14/14), 152 So.3d 880. Defendant's retrial on Counts 2 and 3 was held on June 3, 2015, and he again was found guilty as charged on both counts by a six-person jury. The trial judge sentenced Mr. Ross to three years at hard labor on each count, with the sentences to run concurrently. The prosecution subsequently filed a habitual offender bill of information and the trial judge again adjudicated defendant a fourth-felony offender. Later, after having heard testimony from two of defendant's sisters, the trial judge denied defendant's motion for downward departure from the mandatory minimum sentence as a fourth-felony habitual offender, and sentenced Mr. Ross to the mandatory minimum sentence of twenty years at hard labor without benefit of probation or suspension of sentence on both counts, with the sentences to run concurrently. The trial court denied defendant's oral and written motions to reconsider sentence that date and Mr. Ross again sought appellate review.

## II

We begin by addressing Mr. Ross' uncounseled claims that allege error during the course of trial. He specifically attacks two of the trial judge's rulings. He first argues that the trial judge erred by ruling other crimes evidence admissible. Prior to trial, the prosecution submitted a *Prieur* notice, containing its intent to introduce evidence of Mr. Ross' prior misdemeanor conviction for marijuana, which we affirmed in *Ross I*. The prosecution argued that evidence of this prior conviction was relevant to demonstrate intent and absence of mistake because the marijuana seized in connection with the instant conviction was found in the same plastic bag as the carisoprodol and cocaine. The trial judge denied the defense motion to exclude the prior conviction and ruled the evidence admissible.

He next asserts that the trial judge erred by denying his motion for mistrial based on the prosecutor's improper opening statement. After our original opinion remanded this matter for a retrial, Mr. Ross filed a motion *in limine* to bar the prosecution from introducing evidence of his prior trial and guilty verdicts, which we reversed in *Ross I*. The trial judge granted the motion *in limine*. During opening statements, however, the prosecutor stat-

ed: "[B]ut something else y'all will also hear is that this case had been tried before and the marijuana...." Defense counsel objected and then moved for a mistrial, which the trial judge denied.

We address each assignment of error in turn.

### A

As a general rule, evidence of other crimes to prove a bad character or to show that the defendant acted in conformity therewith is not admissible at trial. *See* La. C.E. art. 404 B(1); *State v. Prieur*, 277 So.2d 126, 128 (La. 1973); *State v. Hunter*, 15–0306, p. 12 (La.App. 4 Cir. 9/9/15), 176 So.3d 530, 537. The Louisiana Code of Evidence, however, allows the prosecution to introduce evidence of other crimes or acts if an independent and relevant reason is established, for example as proof of motive, intent, identity, or absence of mistake. *See* La. C.E. art. 404 B(1). Such evidence should not be admitted unless it tends to prove a material fact at issue or rebuts a defendant's defense, and its probative value must outweigh its prejudicial effect. *See* La. C.E. art. 403; *Hunter*, 15–0306, p. 12, 176 So.3d at 537. A trial judge's "ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion." *State v. Taylor*, 16–1124, 16–1183, p. 18 (La. 12/1/16), —— So.3d ——, ——, 2016 WL 7030750.

Here, the prosecution was burdened at trial with proving that, among other things, Mr. Ross knowingly or intentionally possessed the controlled substances. Mr. Ross, however, denied possessing the drugs. The prosecution argued that because the marijuana seized in connection with the instant conviction was found in the same plastic bag as the carisoprodol and cocaine, his possession of marijuana in the same bag as the other drugs demon-strated intent and/or absence of mistake. These reasons are valid grounds for other crimes evidence under La. C.E. art. 404 B(1), and served to rebut Mr. Ross' trial defense. Having reviewed the record in light of Mr. Ross' claims, and the Supreme Court's most recent discussion of the issue in *Taylor*, we conclude that the trial judge did not abuse her discretion in ruling this evidence admissible. *See Taylor*, 16–1124, 16–1183, p. 18, —— So.3d at ——, 2016 WL 7030750 at *10. Further, we do not find that the probative value of the evidence was outweighed by the prejudicial effect—possession of marijuana is a misdemeanor and lesser offense than possession of carisoprodol or cocaine. *See, e.g., State v. Miller*, 98–0301, p. 13 (La. 9/9/98), 718 So.2d 960, 967 (other crimes evidence was less serious than charged crimes and would "not unduly inflame the jury.").

### B

We next address Mr. Ross' assertion that the trial judge erred when she denied his request for a mistrial following the prosecution's reference in opening statements to the marijuana conviction that we affirmed in *Ross I*. The courts of this state have repeatedly declared that mistrial is a drastic remedy and the determination of whether one is warranted "lies in the sound discretion of the trial judge." *See State v. Johnson*, 15–0679, p. 9 (La. App. 4 Cir. 2/3/16), 187 So.3d 35, 40 (quoting *State v. Leonard*, 05–1382, p. 11 (La. 6/16/06), 932 So.2d 660, 667). And, even when a prosecutor exceeds the bounds of a proper opening statement, we will not reverse a conviction unless "thoroughly convinced" that the statement influenced the jury and contributed to the verdict. *See id.* (citing *State v. Ricard*, 98–2278, 99–0424, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397).

■ |₈Here, while it is arguable that the prosecutor's statement exceeded the bounds of the trial judge's pre-trial evidentiary ruling, we observe that Mr. Ross conveniently forgets that his own counsel repeatedly mentioned the prior trial in front of the jury when attempting to impeach Officer Dwayne Bastion with his testimony from the 2012 trial. It is therefore arguable that defense counsel's questioning created just as much, if not more, prejudice to Mr. Ross than did the prosecutor's statement. "A defendant cannot complain that prejudicial conduct requires a mistrial, when the alleged prejudice was created by his own...conduct...." *State v. Bridgewater*, 00–1529, p. 25–26 (La. 1/15/02), 823 So.2d 877, 899 (quoting *State v. Wiggins*, 337 So.2d 1172, 1173 (La. 1976)). We, accordingly, conclude that the trial judge did not abuse her discretion when she denied Mr. Ross' motion for mistrial.[2]

### III

In this Part we address Mr. Ross' uncounseled claims that allege error in his multiple bill hearing and adjudication. Mr. Ross first argues that the multiple bill hearing was illegal because it was held after he had served the underlying sentences for possession of carisoprodol and possession of cocaine. He next |₉argues that the trial judge erred when she failed to quash the prosecution's habitual bill.

### · A

■ We first discuss the law and jurisprudence applicable to habitual offender proceedings. In habitual offender proceedings, the prosecution bears the burden of proving any issue of fact beyond a reasonable doubt. *See* La. R.S. 15:529.1 D(1)(b). This burden requires the state to establish both the prior felony conviction and the defendant's identity as the same person who committed that prior felony. *See State v. White*, 13–1525, p. 2 (La. 11/8/13), 130 So.3d 298, 300. To establish identity, the prosecution may present 1) testimony from witnesses, 2) expert opinion regarding fingerprints of the defendant when compared with those in the prior record, 3) photographs in the duly authenticated record, *or* 4) evidence of an identical driver's license number, sex, race, and date of birth. *See State v. Jones*, 14–1118, p. 12 (La.App. 4 Cir. 4/1/15), 165 So.3d 217, 225 (emphasis in original) (citing *State v. Stanfield*, 13–1193, p. 8 (La.App. 4 Cir. 3/26/14), 137 So.3d 788, 794).

■ Thus, the prosecution is not required to use a specific type of evidence to carry its burden at a habitual offender hearing; rather, "prior convictions may be proved by *any* competent evidence." *White*, 13–1525, p. 2, 130 So.3d at 300 (emphasis in original). Of course, if a defendant has previously pled guilty to a felony offense, competent evidence must establish that the plea was freely and vol-

---

**2.** Mr. Ross also makes the *pro se* claim that the record on appeal is incomplete because Brian Schulz, an expert witness in narcotics, who testified at the first trial in 2012, was declared unavailable for the instant trial and his prior testimony was read into the record. The reading of Mr. Schulz's testimony to the jury was not transcribed and his prior testimony is not included in the record before us. The missing transcript, however, ostensibly of Mr. Schulz's testimony about the composition of the seized drugs, is not relevant to any of his claims on appeal, nor does Mr. Ross specify any prejudice suffered apart from the overarching right to judicial review under La. Const. art. 1, § 19. *See State v. Wells*, 11–0744, pp. 31–32 (La.App. 4 Cir. 4/13/16), 191 So.3d 1127, 1148–49. *See also State v. Castleberry*, 98–1388, p. 27 (La. 4/13/99), 758 So.2d 749, 773 ("Indeed, an incomplete record may nonetheless be adequate for appellate review.") (citation omitted). We find the current record sufficient to afford Mr. Ross his right to appellate review.

untarily entered, which requires a valid waiver of the three constitutional rights specified in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *See State v. Shelton*, 621 So.2d 769, 774 (La. 1993); *Stanfield*, 13–1193, p. 13, 137 So.3d at 797. We review trial judges' rulings on motions to quash which involve determinations of mixed questions of law and fact—like those issues raised by Mr. Ross here—under an abuse-of-discretion standard. *See State v. Franklin*, 13–1489, p. 10 (La.App. 4 Cir. 6/11/14), 147 So.3d 231, 240.[3]

**B**

We turn now to examine the evidence adduced at Mr. Ross' habitual offender proceeding. At the hearing, the prosecution sought to establish that Mr. Ross was a fourth felony offender by attempting to prove the following three felony guilty pleas:

- A 2001 guilty plea to a charge of possession of marijuana, second offense, after which he was sentenced to two years imprisonment, suspended, with three years of active probation.[4] In support, the prosecution introduced a bill of information from Jefferson Parish, a minute entry revealing that Mr. Ross had pled guilty, and a *Boykin* form signed by Mr. Ross (Exhibit S–2).

- A 2005 guilty plea to a charge of possession of cocaine, after which he was sentenced to three years imprisonment, suspended, with two years of active probation. In support, the prosecution introduced a fingerprint card taken at the time of arrest (Exhibit S–3) and a certified packet containing a bill of information from Orleans Parish, a *Boykin* form, a docket master printout, district court minutes, and an arrest register (Exhibit S–4).

- A 2010 guilty plea to a charge of possession of cocaine, after which he was sentenced to a three-year suspended sentence, with five years of probation (two active, three inactive). In support, the prosecution introduced a fingerprint card (Exhibit S–5) and an *in globo* certified packet from Orleans Parish (Exhibit S–6).

At the hearing, the prosecution presented the testimony of Officer George Jackson, who was qualified over defense objection as an expert in fingerprint examination and comparison. He first identified Exhibit S–1 as a set of Mr. Ross' fingerprints which he had taken in court that morning. He then testified that the prints on S–1 matched the prints found in Exhibits S–2, S–3, and S–4. As for the 2010 felony, Officer Jackson testified that

---

**3.** In contrast, we apply a *de novo* standard of review when reviewing rulings on motions to quash involving solely legal issues. *See State v. Franklin*, 13–1489, p. 11 (La.App. 4 Cir. 6/11/14), 147 So.3d 231, 240, n. 5.

**4.** In 2015, the Louisiana legislature enacted significant amendments to the Uniform Controlled Dangerous Substances Law with respect to sentences for possession of marijuana. *See* 2015 La. Acts 295 (eff. June 29, 2015). Pertinent to Mr. Ross' case is the amendment which reduced possession of marijuana, second offense, from a felony, punishable by up to five years imprisonment, to a misdemean-

or, punishable by a maximum six months imprisonment in parish jail. *See* La. R.S. 40:966 E(1)(b). But because the offense for possession of marijuana, second offense, occurred before this amendment became effective, it is still considered a felony. *See State v. Sugasti*, 01–3407, p. 4 (La. 6/21/02), 820 So.2d 518, 520 ("This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer.") (citation omitted); *see also State v. Mead*, 14–1051, p. 4 (La.App. 4 Cir. 4/22/15), 165 So.3d 1044, 1047.

the fingerprints from S–1 were from the same individual as in S–5. He noted, however, that the fingerprints on the bill of information in Exhibit S–6 were too faint for comparison with S–1, and so he compared the "pertinent information" from the arrest register in Exhibit S–6 to the fingerprint card in Exhibit S–5 to determine that the defendant was one and the same, as he had already matched the prints from Exhibit S–5 to Exhibit S–1. The prosecution, accordingly, argued that the trial judge should re-sentence Mr. Ross as a four-time felony offender. Mr. Ross, however, argued that his identity had not sufficiently been proven because the bills of information in Exhibits S–4 and S–6 did not contain his date of birth. We observe, however, the certified arrest registers found in both sets of exhibits contain Mr. Ross' accurate date of birth.

As to the validity of the prior guilty pleas, the prosecution introduced trial court minutes for each prior felony, which revealed that Mr. Ross was represented by counsel and advised of the triad of rights under *Boykin*. Copies of the guilty plea forms were also introduced, each bearing Mr. Ross' initials and signature.

## C

We now analyze Mr. Ross' habitual offender assignments of error in light of the applicable law and the facts.

### 1

■ Mr. Ross first claims that the multiple bill hearing was illegal because it was held after he had served his original sentences for possession of carisoprodol and cocaine. Specifically, the prosecution in this case filed a habitual offender bill, alleging Mr. Ross' status as a fourth felony offender, after trial and the imposition of sentence. According to the Orleans Parish Docket Master, however, Mr. Ross was scheduled to be released on August 25, 2015—approximately three months after trial—as he had already served his original three-year concurrent sentences at that point. The same day, the minutes reveal that the trial judge placed a hold on Mr. Ross, ordering him not to be released. Two months later, at the conclusion of the habitual offender proceeding, the trial judge found that the prosecution proved Mr. Ross' status as a fourth felony offender.

■ Mr. Ross cites *State ex rel. Williams v. Henderson*, 289 So.2d 74 (La. 1974) in support of his claim that the multiple bill hearing was illegal because it was held after he had served his original sentences. The Louisiana Supreme Court, however, explicitly overruled *Henderson*, holding that the adjudication and resentencing of a defendant need not occur before completion of the underlying sentence. *See State v. Muhammad*, 03–2991, p. 17 (La. 5/25/04), 875 So.2d 45, 56. Of course, habitual offender proceedings must occur within "a reasonable time" after the filing of the bill of information. *See State v. Toney*, 02–0992, pp. 4–5 (La. 4/9/03), 842 So.2d 1083, 1086. Here, the prosecution filed the multiple bill on June 24, 2015 and the habitual offender proceedings were held on October 15 of that same year. We do not find four months to be an unreasonable amount of time. *Cf. Toney*, 02–0992, p. 7, 842 So.2d at 1087 (seventeen-month delay not unreasonable); *State v. Grimes*, 01–0576, pp. 15–16 (La.App. 4 Cir. 5/2/01), 786 So.2d 876, 885 (sixteen-month delay not prejudicial).

### 2

Mr. Ross next argues that the trial judge should have sustained the motion to quash the habitual bill, although his claim appears more procedural in nature than

substantive.[5] Nevertheless, we have examined the evidence introduced in connection with the prosecution's bill in light of the applicable law and conclude that the prosecution carried its burden of proof to establish commission of the prior felonies and Mr. Ross' identity as the same person who committed those felonies. *See generally Shelton*, 621 So.2d at 777. Thus, the trial judge did not abuse her discretion when she denied Mr. Ross' motion to quash the prosecution's habitual offender bill.

## IV

We address in this Part the sole counseled claim on appeal—whether the sentences imposed on Mr. Ross are constitutionally excessive.

## A

Prior to sentencing under the habitual offender provisions, defense counsel presented two of Mr. Ross' sisters to speak on his behalf and in support of Mr. Ross' Motion for Downward Departure from the Statutory Minimum Established by the Habitual Offender Law.

Aurolyn Ross and Almejie Miller testified that their brother, Mr. Ross, had a difficult childhood. Both his parents had drug and alcohol addiction issues and growing up, the children were shuffled to different households, depending on which family member could care for them at the time. Mr. Ross grew up in extreme poverty and suffered repeated physical abuse at the hands of one of his uncles. Mr. Ross also witnessed a family member killed by his stepfather when he was a child.

Counsel argued to the trial judge that a downward departure from the statutory minimum under the habitual offender stat-

ute was warranted based on Mr. Ross' unstable and abusive family life and his repeated exposure to drug culture and drug addiction. Counsel also pointed out that Mr. Ross' conviction for possession of marijuana, second offense, although a felony at the time, has since been amended to a misdemeanor and urged the trial judge to take this amendment into account when sentencing.

The trial judge denied the motion, citing Mr. Ross' lengthy criminal history, his apparent lack of remorse, and his consistent relapses into drug abuse. She imposed the mandatory minimum, two concurrent sentences of twenty years imprisonment, without benefit of probation or suspension of sentence.

## B

It is true, as a general proposition, that mandatory minimum sentences under the Habitual Offender Law are presumed to be constitutional. *See State v. Johnson*, 97–1906, pp. 5–6 (La. 3/4/98), 709 So.2d 672, 675. And, although the judiciary affords great deference to the legislative determination of an appropriate sentence, courts are not without power to declare a minimum sentence constitutionally excessive in a particular case. *See id.*, 97–1906, p. 6, 709 So.2d at 676 (citing *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979)). The Louisiana Supreme Court has extended this power to minimum sentences imposed under the Habitual Offender Law. *See State v. Dorthey*, 623 So.2d 1276 (La. 1998). *Dorthey* held that the sentencing judge must reduce a defendant's sentence to one not constitutionally excessive if the judge finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable

---

5. Mr. Ross asserts that his motion to quash was denied as "premature and vague," which the district court minutes corroborate. The record does not contain any hearing transcripts relating to the denial.

goals of punishment", or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." *Dorthey*, 623 So.2d at 1280. *See also Solem v. Helm*, 463 U.S. 277, 288–89, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (Eighth Amendment prohibition on cruel and unusual punishments requires felony prison sentences to be proportional to the crime).

■ To be entitled to a downward departure, a defendant must clearly and convincingly show that "[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Lindsey*, 99–3302, 99–3256, p. 5 (La. 10/17/00), 770 So.2d 339, 343 (quoting *Johnson*, 97–1906, p. 7, 709 So.2d at 676).

### C

We find that Mr. Ross has demonstrated by clear and convincing evidence that his is a rare and exceptional case, which warrants downward departure from the mandatory minimum sentence of twenty years.

Remarkably, Mr. Ross has never served a term of imprisonment, despite his recidivist status. For every prior felony conviction contained in the habitual offender bill of information Mr. Ross received probation. And, there is nothing in the record that indicates Mr. Ross violated his probation and was forced to serve the original terms of imprisonment.

The goals of the Habitual Offender Law are to deter and punish recidivism, but we are unconvinced in this case that the twenty-year sentence serves those goals *fairly*. The habitual offender statute is based on a concept of graduated punishment—that is, the more convictions one acquires, the harsher the punishment will be each time. *See* La. R.S. 15:529.1 A(1)–(4). There is nothing graduated about the punishment in this case, however, where the sentence catapults from zero to twenty years imprisonment. Enhancing a sentence to such a degree when Mr. Ross has never suffered the serious consequence of imprisonment for an identical prior offense is not an effective or fair method of deterring and punishing crime. *See generally Ewing v. California*, 538 U.S. 11, 27, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) ("[A] recidivist statute['s] primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time."); *Graham v. Florida*, 560 U.S. 48, 72, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (defendants for whom punishment is "rarely imposed" are "less likely to take a [future] possible punishment into consideration"). *Cf. Rummel v. Estelle*, 445 U.S. 263, 278, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (upholding sentence imposed under a recidivist statute which required defendant to have previously served terms of *actual* imprisonment: "[Under the statute] a recidivist must...demonstrate that conviction and actual imprisonment do not deter him from returning to crime once he is released."). In this case we do not see any penological justification for imposition of a twenty-year term on a person who was not adequately forewarned, by way of actual imprisonment, of the severe consequences he faced.

We therefore find that, because of the unusual circumstances in this case, Mr. Ross *is* exceptional and is a victim of the legislature's failure to assign sentences that are meaningfully tailored to his circumstances. Accordingly, we find his concurrent sentences of twenty years un-

constitutionally excessive and we vacate the sentences as imposed.

### D

We briefly note other compelling reasons why a downward departure is warranted in this case.

### 1

All of Mr. Ross' felonies, instant and prior, are non-violent crimes of simple possession. As our Supreme Court has noted, "the classification of a defendant's instant or prior offenses as non-violent should not be discounted." *Johnson*, 709 So.2d at 676. *See also, e.g., State v. Mosby*, 14–2704, p. 1 (La. 11/20/15), 180 So.3d 1274 (per curiam); *State v. Ladd*, 14–1611, p. 1 (La. 3/27/15) (Knoll, J., concurring), 164 So.3d 184, 184; *State v. Burns*, 97–1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, 1020. And, although recidivism sentencing statutes may serve legitimate state goals, a defendant's status as a multiple offender "cannot be considered in the abstract" in light of a history of minor, non-violent offenses. *Solem*, 463 U.S. at 296–97, 103 S.Ct. 3001.

Moreover, Mr. Ross pled guilty *as charged* to simple possession on each previous occasion, demonstrating that his convictions did not result from more severe original charges. *See generally* La. R.S. 40:966 B(3) (penalty for *distribution* of marijuana is a range of five to thirty years); La. R.S. 40:967 B(4) (penalty for *production* of cocaine is a range of ten to thirty years).

### 2

It is also notable that Mr. Ross' conviction for possession of marijuana, second offense, while classified as a felony at the time of the offense in 2000, has since been downgraded to a misdemeanor by the legislature as part of extensive amendments to sentences for marijuana possession. *See* 2015 La. Acts 295 (eff. June 29, 2015); *see also* Note 4, *supra.* At the time, the offense was punishable by a maximum fine of $2000, imprisonment without or without hard labor for not more than five years, or both—a felony as defined in La. C.Cr.P. art. 933(3). Under current legislation, effective at the time Mr. Ross was sentenced as a fourth offender, the same crime is now a misdemeanor, punishable by a maximum of $1000, imprisonment in parish jail for not more than six months, or both. *See* La. C.Cr.P. art. 933(4).

Although we are cognizant that the law at the time of the offense generally applies at sentencing, courts should also consider the expression of legislative will at the time the new law was passed. *See State v. Jarreau*, 05–0355, p. 12 (La.App. 4 Cir. 12/14/05), 921 So.2d 155, 163. *See also State v. Mayeux*, 01–3195 (La. 6/21/02), 820 So.2d 526 (plurality) (although ameliorative sentencing provision enacted after date of offense was not explicitly retroactive, court applied retroactively in light of legislative intent).[6] Here, although the 2015 amendments were made neither explicitly retroactive nor prospective, it is clear that the legislature currently believes that a conviction for possession of marijuana, second offense, does not rise to the level of a felony. Implicitly, the legislature also believes such a conviction should not be used to enhance a sentence under the Habitual Offender Law.[7] And, notably,

---

6. Our Supreme Court has also recognized that many other jurisdictions allow the application of ameliorative provisions enacted after commission of the offense, as long as the defendant's conviction has not yet become final. *See Mayeux*, 01–3195, pp. 6–7, 820 So.2d at 531 (plurality) (citing cases).

7. The legislative history of 2015 La. Acts. 295 indicates that a central concern for the legis-

had Mr. Ross been adjudicated a third-felony habitual offender, his sentencing range would only be three-and-a-third to ten years. *See* La. R.S. 15:529.1 A(3).

### 3

Finally, we note the testimony of Mr. Ross' sisters, which evidenced his difficult childhood, including exposure to violence and substance abuse at a young age, as well as poverty and physical abuse. Mr. Ross' prior felony convictions indicate that he clearly struggles with substance abuse and, given his non-violent criminal history, appears to present no danger to anyone but himself.

Although this may not make Mr. Ross' situation "exceptional" in this state,[8] we do find that his circumstances should be further explored for mitigation evidence.

### V

In this Part, given our finding that Mr. Ross' enhanced sentences are constitutionally excessive under the unique circumstances of his case, we briefly address the resentencing hearing to be conducted by the trial judge on remand.

Although the trial judge held a hearing on the motion for downward departure and heard testimony from two of Mr. Ross' sisters, no pre-sentence investigation ("PSI") was conducted and no other evidence was submitted. A PSI report will provide invaluable information about Mr. Ross' circumstances and history and will aid the judge in her consideration of the factors under La. C.Cr.P. art. 894.1. Indeed, it is "unusual" for a trial judge to sentence a defendant without the benefit of a PSI in light of an excessiveness claim. *See State v. Conner*, 09–1023, p. 4 (La.App. 4 Cir. 2/3/10), 30 So.3d 1132, 1135. For instance, the trial judge found that Mr. Ross had a lengthy criminal history with respect to drug offenses and that he was unrepentant. Evidence of drug addiction or exposure to substance abuse at a young age, however, could have considerable mitigation value. *See State v. Pernell*, 14–0678, p. 5 (La.App. 4 Cir. 10/15/14), 151 So.3d 940, 945 ("The importance of a *full* evidentiary hearing in the district court on a claim of excessiveness can hardly be overstated.") (emphasis added) (citation omitted).

We thus vacate the sentences imposed and remand to the trial court for a full and meaningful sentencing hearing, at which Mr. Ross will be allowed to present all evidence relevant to an excessiveness claim. The trial judge is to order a presentence investigation report before the hearing. We are mindful that a judge "is

lature was the cost of incarcerating offenders convicted of marijuana possession. We cannot envision how imposing a twenty-year term, based in part on a conviction which has been downgraded to a misdemeanor, serves the legislative goal of reducing the soaring costs of incarcerating nonviolent offenders. *See generally State v. Ladd*, 15–0772, p. 9 (La.App. 4 Cir. 4/13/16), 192 So.3d 235, 245 (discussing the "draconian" effects of the Habitual Offender Law and the high costs of incarcerating non-violent offenders); *State v. Hall*, 14–1046, p. 18 (La.App. 4 Cir. 5/13/15), 172 So.3d 61, 72 (noting increasing costs of incarceration as defendant ages); *Burns*, 97–1553, 723 So.2d at 1020 (same). *See also State v. Johnson*, 97–1906, pp. 5–6 (La. 3/4/98), 709 So.2d 672, 679 (discussing high costs of incarceration in Louisiana, particularly for nonviolent drug offenses) (Johnson, J., dissenting).

8. Louisiana courts routinely find the circumstances of poverty, drug-abuse, and physical abuse "unexceptional" to warrant departure from the minimum sentence. *See, e.g., State v. Noble*, 12–1923, p. 3 (La. 4/19/13), 114 So.3d 500, 501 (defendant's support of several children and nonviolent history of possession of small quantities of cocaine and marijuana did not "define[ ] a class of offender sufficiently narrow to qualify as exceptional.").

not free to sentence the defendant to whatever sentence [s]he feels is appropriate under the circumstances" but rather the trial judge must impose "the longest sentence that is not constitutionally excessive." *Johnson*, 97–1906, p. 8, 709 So.2d at 677. The trial judge must also keep in mind that the sentences imposed upon Mr. Ross must be meaningfully tailored to his culpability and the circumstances of his case, and must fairly and justly serve society's penological goals.

### DECREE

We affirm the convictions of Francis Ross for possession of carisoprodol and for possession of cocaine. We vacate the enhanced twenty-year sentences imposed upon Francis Ross, Jr., and remand to the trial court for resentencing. The trial judge shall order a pre-sentence investigation and conduct a full evidentiary hearing, at which Mr. Ross shall be permitted to introduce evidence and adduce testimony. The right to appeal the sentences is reserved unto both parties. *See* La. C.Cr.P. art. 881.2. In all other respects, the appeal is affirmed.

### CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED

LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.

I respectfully concur in the result of the majority's affirmation of Defendant's convictions. However, I dissent from the majority's finding that Defendant's sentences should be vacated for excessiveness. I find that the district court did not abuse its discretion in determining that Defendant did not meet his burden of proving that he is exceptional[1] such that he is one of the rare individuals whose circumstances warrant a downward departure. As a result, I would affirm Defendant's sentences.

Unlike some other cases this Court has recently decided,[2] in the case *sub judice*, Defendant received a full downward departure hearing. Following the hearing, the district court, considering factors found in La. C.Cr.P. art. 894.1, determined that Defendant should receive the mandatory minimum, two concurrent sentences of twenty years. Given that the district court followed the proper procedure for a downward departure hearing,[3] the issue before this Court is not whether we agree that Defendant is not exceptional, but whether the district court abused its discretion in determining that Defendant is not exceptional. *See State v. Kisack*, 2015–0083 (La. App. 4 Cir. 3/30/16), 190 So.3d 806, 812 (stating "[a] trial judge has broad discretion when imposing a sentence and an appellate court may not set aside a sentence absent a *manifest abuse of discretion*") (emphasis added); *see also State v. Green*, 2010–0008, pp. 8–9 (La. App. 4 Cir. 11/17/10), 52 So. 3d 253, 258–59 (discussing the district court's discretion in deciding a downward departure motion filed by a multiple offender).

The majority makes a finding that Defendant "has demonstrated by clear and convincing evidence that his is a rare and exceptional case, which warrants downward departure" with no explanation as to why it finds that the district court abused its discretion in reaching the opposite conclusion. Instead, the majority focuses its

---

1. *See State v. Lindsey*, 99–3302, p. 5 (La. 10/17/00), 770 So.2d 339, 343.

2. *See, e.g., State v. Ellis*, 2014–1170 (La. App. 4 Cir. 3/2/16), 190 So.3d 354; *State v. Dowell*, 2016–0371 (La. App. 4 Cir. 8/10/16), 198 So.3d 243.

3. *See Ellis*, 2014–1170 at p. 39, 190 So.3d at 378; *Dowell*, 2016–0371 at p. 5, 198 So.3d at 249–50 (internal citations omitted).

analysis on whether it is *fair* to sentence an individual who has never been incarcerated to the mandatory minimum the Habitual Offender Law, La. R.S. 15:529.1, sets out for quadruple offenders. I respectfully caution the majority that sentences under the Habitual Offender Law are presumed constitutional, *State v. Johnson*, 97–1906, pp. 5–6 (La. 03/04/98), 709 So.2d 672, 675, and further, that there must be substantial evidence to rebut the presumption of constitutionality. *State v. Francis*, 96–2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461. The district court acts within its discretion to depart from the mandatory minimum when it finds that a defendant is "exceptional." *State v. Lindsey*, 99–3302, p. 5 (La. 10/17/00), 770 So.2d 339, 343. To overturn a district court's determination that the mandatory minimum under the Habitual Offender Law is appropriate, when the record before this Court reveals that the district court held a proper downward departure hearing and did not reach its decision in an arbitrary manner,[4] renders sentencing discretion meaningless. Thus, I would affirm the sentences of the district court.

---

**4.** *Boudreaux v. Bollinger Shipyard*, 2015–1345, p.16 (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 771 (stating "[a]n abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner. 'Arbitrary or capricious' means the absence of a rational basis for the action taken.") (internal citations omitted).