# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01118-COA

WILLIE RAY BOLTON                                    APPELLANT

v.

STATE OF MISSISSIPPI                                    APPELLEE

DATE OF JUDGMENT:              09/21/2022
TRIAL JUDGE:                   HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED:     FORREST COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: GEORGE T. HOLMES
                               WILLIE RAY BOLTON (PRO SE)
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:             PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 10/10/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Willie Ray Bolton was convicted of business burglary and sentenced to serve seven years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.     Bolton appeals his conviction. In the appellate brief filed by the Office of State Public Defender, Indigent Appeals Division, Bolton asserts that the Forrest County Circuit Court erred by denying his request to have the jury instructed on the lesser-included offense of larceny and that the verdict was not supported by the weight of the evidence. Bolton also filed a pro se supplemental brief and asserts that the trial court erred by allowing Maurice

Sutton to testify at trial.

¶3.     For the reasons discussed below, we find no error and affirm.

**FACTS**

¶4.     On March 23, 2020, Officer Jacob Hiatt of the Hattiesburg Police Department responded to a call regarding a burglary at the Hattiesburg Public Works Department. Upon arriving at the scene, Officer Hiatt learned that a storage shed had been burglarized between the hours of 1:25 p.m. and 2:32 p.m. the previous day. Maurice Sutton, the Director of the Hattiesburg Department of Public Works, informed Officer Hiatt that when Public Works Department employees arrived to work on Monday morning, they discovered the door to the shed had been kicked in, and various items were stolen out of the shed. According to Sutton, three weed-eaters and one backpack blower were missing from the burglarized shed.

¶5.     Officer Hiatt reviewed the surveillance footage of the burglary. The footage showed an individual removing three weed-eaters from the storage shed and putting the items in the trunk of a silver Mercury Grand Marquis.[1] The individual wore a mask that covered part of his face. Officer Hiatt took photographs of the individual and the car shown in the surveillance footage. These photographs were released to the public. The individual in the

---

[1] At trial, Bolton's counsel asked Sutton about the surveillance footage showing the individual removing property from the shed. Defense counsel asked, "Is there any reason why we don't have a photograph of that back-pack blower being carried across here by the same person? You [have] . . . the photographs of the three weed[-eaters], but no backpack blower." Sutton responded, "Not that I'm aware of," and explained that "[t]here are some angles that the camera could not catch." Sutton confirmed that three weed-eaters and one backpack blower were stolen from the shed.

footage was eventually identified as Willie Ray Bolton, and the owner of the car was identified as James Sims Jr.

¶6.     Sims testified that on the day of the burglary, Bolton came to Sims's house to mow his yard. According to Sims, Bolton finished mowing around 11:30 a.m. Bolton then asked to borrow Sims's car to get some beer, and Sims consented. Sims estimated that Bolton was gone with the car anywhere from fifteen minutes to two hours. Sims stated that Bolton returned with beer, and Sims testified that he did not observe any weed-eaters in the trunk of the car.

¶7.     Sims testified that an acquaintance informed him that his car was involved in a burglary. Sims stated that he confronted Bolton, and Bolton initially denied the allegations. Sims testified that Bolton eventually confessed to committing the burglary. Sims stated that after Bolton confessed to the burglary, he went to the Hattiesburg Police Department to clear his own name. At the police department, an officer showed Sims the photographs from the surveillance footage at the Public Works Department, and Sims identified the car as his and the suspect as Bolton. As a result, Bolton was indicted as a habitual offender for one count of burglary, in violation of Mississippi Code Annotated sections 97-17-33 (Rev. 2014) and 99-19-81 (Supp. 2018).

¶8.     At trial, the jury heard testimony from Sutton, Sims, and Detective Hiatt. After the State rested its case-in-chief, Bolton moved for a directed verdict, which the trial court denied. The jury ultimately returned a verdict finding Bolton guilty of business burglary, and

3

the trial court sentenced Bolton as a habitual offender to serve seven years in the custody of the MDOC.

¶9. Bolton filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Bolton's motion, and this appeal followed.

## DISCUSSION

### I. Jury Instruction

¶10. Bolton first argues that the trial court erred by denying his request for the jury to be instructed on the "lesser offense" of larceny. Bolton asserts that he was entitled to present his alternative theory of defense for the jury to consider. He therefore maintains that the trial court should have instructed the jury that if they found Bolton not guilty of committing the breaking and entering, they could find him guilty of larceny.

¶11. We review a trial court's refusal of a proposed jury instruction for an abuse of discretion. *Willis v. State*, 352 So. 3d 602, 615 (¶38) (Miss. 2022). "A defendant is entitled to have jury instructions given which present his theory of the case, but the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*. (internal quotation marks omitted).

¶12. The record shows that Bolton requested a jury instruction on the "lesser *and included* offense of larceny." (Emphasis added). During the jury instruction conference, the trial court refused Bolton's proposed larceny instruction (Instruction D-4) after finding that Bolton's alternative theory of defense was based on "pure speculation." The trial court

4

opined that in order to instruct the jury on larceny, the evidence would have to show that "somebody kicked the door in and left the property on the premises[,] . . . [and then Bolton] came on there and saw the property and said well, I'm taking it." The trial court determined that "[t]here is just no testimony in the record that the equipment disappeared for any reason other than the door was kicked in and this person carried it off the property."

¶13.    During the jury instruction conference and in the order denying Bolton's post-trial motion, the trial court referred to larceny as a lesser-included offense of burglary. However, as acknowledged by both Bolton and the State, larceny is not a lesser-included offense of burglary. *See Smith v. State*, 725 So. 2d 922, 927 (¶12) (Miss. Ct. App. 1998). Rather, larceny is a lesser-*nonincluded* offense of burglary.

¶14.    In *Hye v. State*, 162 So. 3d 750 (Miss. 2015), the Mississippi Supreme Court held that defendants are no longer entitled to lesser-nonincluded-offense instructions:

> We agree with the Court of Appeals that the trial court properly denied Hye's request for an accessory-after-[the-]fact instruction because there was no evidentiary basis for it. We also find, after much consideration on the matter, that a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions.

*Id.* at 751 (¶2). As stated, both parties in this case agree that larceny is not a lesser-included offense of burglary. Additionally, the record confirms that Bolton was indicted for burglary and not for larceny. "[B]ecause defendants in this state no longer enjoy the right to have the jury instructed on a charge for which they have not been indicted unless it is included in the

5

charged offense[,]" we find that the trial court did not err by refusing Bolton's request for a larceny instruction. *McCoy v. State*, 196 So. 3d 1007, 1011 (¶12) (Miss. Ct. App. 2015); *see also Johnson v. State*, 228 So. 3d 933, 936-37 (¶¶10-11) (Miss. Ct. App. 2017); *Gilmore v. State*, 162 So. 3d 876, 880 (¶11) (Miss. Ct. App. 2015).

## II. Weight of the Evidence

¶15. Bolton argues that the jury's verdict was contrary to the weight of the evidence. Bolton submits that the jury found him guilty of burglary based solely on Sims's testimony. Bolton claims, however, that Sims's testimony was unreasonable, self-contradictory, and substantially impeached. As a result, Bolton asserts that the trial court erred by denying his motion for a new trial.

¶16. We review a trial judge's denial of a motion for a new trial challenging the weight of the evidence for an abuse of discretion. *Brewer v. Bush*, 350 So. 3d 1133, 1139 (¶10) (Miss. Ct. App. 2022). "When reviewing challenges to the weight of the evidence, this Court views the evidence in the light most favorable to the verdict." *Moore v. State*, 348 So. 3d 322, 327 (¶18) (Miss. 2022) (internal quotation marks omitted). In such cases, we will not disturb a jury's verdict "unless we find that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable justice." *Id*.

¶17. The transcript shows that Sims's trial testimony and his statement to the police were the State's primary sources of evidence against Bolton. Bolton argues that Sims's trial testimony was too factually inconsistent to support his conviction. Bolton also asserts that

6

Sims's testimony was patently self-serving, explaining that Sims admitted at trial that he considered himself a suspect in the burglary because his car was connected with the crime. Bolton maintains Sims was therefore motivated to remove himself as a suspect.

¶18. The record shows that Sims provided a sworn statement to Detective Gerald Essary at the Hattiesburg Police Department. In his statement, Sims alleged that on the day of the burglary, Bolton mowed Sims's yard and then borrowed Sims's car to purchase beer. According to Sims, Bolton returned Sims's car between fifteen minutes and two hours later, and at that time, Bolton had beer in his possession. At trial, Sims acknowledged that he initially told the police that Bolton was gone for fifteen minutes. He testified, however, that he knew "for a fact" that Bolton was gone for longer than fifteen minutes. Sims testified that at the time he provided his statement to the police, he was mad at Bolton for involving his car in a burglary. Sims explained that "when you are mad and you are writing, you just put what you want to put on there. You say what you got to say. So I put [fifteen] minutes."

¶19. When questioned further about the events on the day of the burglary, Sims testified that Bolton finished mowing Sims's yard at approximately 11:30 a.m. and then he borrowed Sims's car to buy beer. The time-stamp from the surveillance footage showed the individual removing equipment from the Public Works Department property beginning at 1:25 p.m. and then finally leaving at 2:32 p.m.—three hours after Sims testified that Bolton finished mowing and left with his car. At trial, Sims estimated that Bolton could have been gone anywhere from fifteen minutes to two hours, but he was adamant that Bolton was not gone

7

for three hours. However, Sims admitted that too much time had passed since the incident for him to accurately remember exactly how long Bolton was gone with his car. Bolton's attorney argued that based on the time-stamps from the surveillance footage, which Sutton confirmed were accurate, Sims's testimony did not allow Bolton enough time to have committed the crime.

¶20. The record further shows that when giving his statement to the police, Sims identified Bolton as the individual in the photographs from the surveillance footage of the burglary. At trial, Sims was shown the same photographs, and he stated that the individual in the photographs looked like Bolton. Sims testified, however, that the individual in the photographs was wearing different clothes than Bolton was wearing at the time he mowed Sims's yard. Sims confirmed that the car in the photographs belonged to him, and he testified that Bolton was the only person who had used his car that day. However, Sims testified that when Bolton returned his car, he did not see any lawn equipment in the vehicle. Sims testified that when he learned that his car was connected to a burglary, he confronted Bolton. According to Sims, Bolton initially denied committing the burglary but eventually admitted his guilt and told Sims, "Yeah, I did it."

¶21. Although Bolton argues that there are inconsistencies in Sims's statement to police and his testimony, the supreme court has held that "inconsistencies in witnesses' testimony do not require the jury to reject the entire testimony of a witness." *Moore*, 348 So. 3d at 328 (¶25) (internal quotation mark omitted). "Where the verdict turns on the credibility of

8

conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Id.* at 327 (¶19). "The jury is the sole judge of the weight of the evidence and the credibility of the witnesses." *Mohr v. State*, 584 So. 2d 426, 431 (Miss. 1991).

¶22. After viewing the evidence in the light most favorable to the verdict, we find that any "inconsistencies in [Sims's] testimony were not so great as to make the story implausible and do not equate to a verdict that is against the overwhelming weight of the evidence." *Moore*, 348 So. 3d at 329 (¶28). We therefore find that the trial court did not abuse its discretion by denying Bolton's motion for a new trial.

### III. Sutton's Testimony

¶23. In his pro se appellate brief, Bolton asserts that the State failed to disclose Sutton as a witness, and therefore the trial court erred by allowing Sutton to testify at trial. Bolton provides no record support for his contention in his appellate brief, nor does he cite any supporting authority. Mississippi Rule of Appellate Procedure 28(a)(7) requires an appellant's brief to "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with *citations to the authorities, statutes, and parts of the record relied on.*" M.R.A.P. 28(a)(7) (emphasis added). "Arguments that do not comply with [Rule 28(a)(7)] are procedurally barred." *Reading v. Reading*, 350 So. 3d 1195, 1199 (¶19) (Miss. Ct. App. 2022).

¶24. We additionally find that Bolton never raised any issues with Sutton's testimony during the trial-court proceedings below. As a result, the trial court was not given the

9

opportunity to address this issue. "Issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the trial court." *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002).

¶25. Procedural bar aside, the record reflects that the State did in fact disclose Sutton as a witness prior to trial. We therefore find no merit to Bolton's pro se argument.

**CONCLUSION**

¶26. After our review, we find that the trial court did not err by denying Bolton's request for a larceny instruction. We also find that because the jury's verdict is not against the overwhelming weight of the evidence, the trial court did not abuse its discretion by denying Bolton's motion for a new trial. Furthermore, we find that Bolton's argument regarding Sutton's testimony is procedurally barred and also lacks merit. We therefore affirm.

¶27. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**