# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #036

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2017**, are as follows:

**BY CLARK, J.**:

2016-K-0107        STATE OF LOUISIANA v. THAYER GREEN (Parish of E. Baton Rouge)

For the reasons expressed herein, we hold Graham is applicable to a defendant who is adjudicated and sentenced under the Habitual Offender Law to life without parole for a non-homicide offense committed as a juvenile. Accordingly, we affirm defendant's convictions and amend his life sentence under the Habitual Offender Law to delete the restriction on parole eligibility and direct the Department of Corrections to revise defendant's prison masters according to the criteria in La. R.S. 15:574.4(D) to reflect an eligibility date for consideration by the Board of Parole. Further, we remand the matter to the trial court to reconsider the corrected sentence after first conducting an evidentiary hearing to allow defendant the opportunity to establish mitigating circumstances under State v. Dorthey, 623 So. 2d 1276 (1993), and State v. Johnson, 97-1906 (La. 3/4/98), 709 So. 2d 672, and to articulate reasons if consecutive terms are imposed.
CONVICTIONS AFFIRMED; SENTENCE AMENDED; AND REMANDED.

JOHNSON, C.J., dissents in part and assigns reasons.
HUGHES, J., dissents for the reasons given by Johnson, C.J.

Supreme Court of Louisiana

06/29/2017

SUPREME COURT OF LOUISIANA

No. 2016-K-0107

STATE OF LOUISIANA

VERSUS

THAYER GREEN

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**CLARK, J.**

Defendant, Thayer Green, was adjudicated a third felony offender and sentenced under the Habitual Offender Law[1] to a term of life in prison without the benefit of parole, probation or suspension of sentence, for a home invasion committed as a juvenile. We granted certiorari to consider whether the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed. 825 (2010), which held the Eighth Amendment prohibits juvenile offenders convicted of non-homicide offenses from being sentenced to life without parole, applies to an enhanced single sentence of life in prison without parole under the habitual offender statute.[2] For the reasons that follow, we hold *Graham* is, indeed, applicable to a defendant who is adjudicated and sentenced as a habitual offender to life without parole for an offense committed as a juvenile. Therefore, we amend defendant's life sentence under the Habitual Offender Law to delete the restriction on parole eligibility and direct the Department of Corrections to revise defendant's prison masters according to the criteria in La. R.S. 15:574.4(D) to reflect an eligibility date for consideration by the Board of Parole. Furthermore,

---

[1] La. R.S. 15:529.1.
[2] *State v. Thayer Green*, 2016-0107 (La. 2/24/17), _____ So. 3d _____.

we remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The record indicates that the 17-year-old victim, K.L., and the 17-year-old defendant, who had dated previously and had a child together, had been communicating by text messages in the days preceding the offense on July 10, 2012. Early that morning, K.L. was sitting with a male friend in his car, which was parked at the apartment complex where she was staying with her cousin, Jessica Williams. Ms. Williams's younger sister, R.W., was also staying at the apartment.

While in her friend's car, K.L. saw the defendant circle the parking lot in his mother's Toyota Camry. To avoid a confrontation, she exited the car and ran to her cousin's second-floor apartment. Defendant stopped, left his vehicle running, and pursued her.

Once inside, K.L. tried to shut the door but defendant pushed in, knocking her to the floor. He then grabbed K.L. by the hair and punched her. K.L. screamed and told R.W., who had been sleeping on the couch, to call police. Defendant continued to punch, kick and choke K.L., and then grabbed a metal candlestick and struck her about the face and head. Ms. Williams, who had been asleep in her bedroom, was awakened by screams and hid in a closet to call 911. When she emerged from her room and told the defendant that she had called 911, he grabbed R.W.'s cell phone from her hand and fled. The police apprehended defendant shortly thereafter.

Defendant was charged with three counts: (1) home invasion, La. R.S. 14:62.8; (2) armed robbery, La. R.S. 14:64; and (3) aggravated battery, La. R.S.

2

14:34.  On the second day of trial, the state disclosed that it had downloaded approximately 635 pages of text messages, which were extracted from the defendant's cell phone and contained numerous text messages exchanged between him and K.L. from April 12, 2012, through July 10, 2012, the date of the offenses. The trial court delayed the start of trial to give defense counsel time to review the messages, but denied defendant's motion for mistrial based on the late disclosure.

Following trial, the jury found defendant guilty as charged of home invasion, and returned the responsive verdicts of guilty of simple robbery and guilty of second degree battery.  The trial court denied defendant's motions for post-verdict judgment of acquittal and new trial, revoked his probation for two prior felony convictions, and sentenced him to ten years imprisonment at hard labor as to the home invasion count, and to four years imprisonment at hard labor each for the simple robbery and second degree battery convictions.  The trial court ordered the sentences to run consecutively.

The state sought to enhance the sentence for the home invasion conviction by filing a habitual offender bill of information.[3]  Defendant filed a written denial and moved to quash the multiple bill, arguing the two predicate convictions were entered on the same date in 2012.  Following a hearing, the trial court adjudicated defendant a third felony offender and resentenced him on count one to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court subsequently denied the defendant's motion to reconsider sentence on excessiveness grounds.

---

[3] In charging defendant as a third felony offender, the state relied upon his April 18, 2012 guilty plea to simple burglary in the 19th JDC, for an offense committed on August 15, 2011, and his April 18, 2012 guilty plea to simple robbery in the 19th JDC, for an offense committed on December 2, 2011.

Defendant appealed. The court of appeal, in an unpublished opinion, affirmed defendant's convictions, habitual offender adjudication, and sentences. *State v. Green*, 15-0308 (La. App. 1 Cir. 12/17/15) (McClendon, J., dissents in part with reasons). Judge McClendon dissented from the majority's refusal to address whether the life sentence without parole under the habitual offender statute violates *Graham.*

The defendant applied for a writ of certiorari seeking a review of his convictions and sentences.

## DISCUSSION

Defendant raises two assignments of error, encompassing three specific issues: (1) disclosure of exculpatory evidence/*Brady* [4] violation; (2) illegal sentences; and (3) excessive sentences. We will consider each issue separately.

**Disclosure of exculpatory evidence/ *Brady* violation**

The defense and the state dispute the significance and impact of the state's late disclosure, during voir dire, of the text messages exchanged between defendant and K.L. that the state obtained from defendant's cell phone. Defendant unsuccessfully moved for a mistrial, and later for a new trial, based on the late disclosure. Specifically, he claimed the messages should have been disclosed as exculpatory and/or impeachment material because some would have shown the victim had lied to the police when she said she had texted defendant before he arrived to tell him not to come over.

---

[4] In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed 2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused after receiving a request for it violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Id.*, 373 U.S. at 87, 83 S.Ct. at 1196-97.

4

The state's suppression of evidence favorable to the accused violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97. The *Brady* materiality inquiry is not "whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed. 2d 490 (1995). Pertinent here, the late disclosure of such evidence may also require a reversal if the timing significantly impacted the defendant's opportunity to effectively utilize the material. *State v. Kemp*, 00-2228, pp. 7-9 (La. 10/15/02), 828 So.2d 540, 545-46. However, a defendant shows no entitlement to relief if the information was available to him through other means by the exercise of reasonable diligence. See generally *United States v. Newman*, 849 F.2d 156, 161 (5th Cir. 1988) (government not obligated to furnish defendant with information he already has *or can obtain with reasonable diligence*); see also *State v. Hobley*, 99-3343, p. 25 n.10 (La. 12/8/99), 752 So.2d 771, 786 ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.") (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)).

The record indicates that defendant filed a motion for new trial on the ground that the trial court committed prejudicial error when it refused to grant a mistrial based on the late disclosure. Defense counsel learned of the state's possession of the text messages just before trial, on June 23, 2013, when counsel was informed by the defendant's family that the cell phone may contain helpful

5

messages but had been seized by the prosecution from among the defendant's possessions at the jail. In response to counsel's inquiry about the phone's whereabouts, the state made all 635 pages available, and the trial court granted the defense a half-day recess to review them. The trial court then excluded the actual text messages from trial on the ground that their admission would have the effect of permitting defendant to testify without having to take the stand, but permitted defense counsel to read selected passages of the victim's messages to defendant during the pertinent time (without defendant's responses). The motion for new trial asserted the late disclosure constituted prejudicial error because the excluded messages were exculpatory on the home invasion count in that the "overall message from the victim on the night of the alleged incident was for [defendant] to come over to the victim's house," though she told police that she had ultimately asked him not to come over.

In his brief to this court, defendant maintains the late disclosure caused undue prejudice because, without adequate time to review all the messages, his trial counsel was unable to use them to "present a more thorough defense" to the home invasion count by showing that the victim had "demand[ed] that he come [over]," and lied to police when she denied having asked him to visit. D. Br., p. 8; see also R., Vol. 1, p. 83. Defendant claims the omitted messages would have undermined K.L.'s credibility by showing she was manipulative and had "authorized" him to enter the apartment.

The state counters that the lower courts correctly rejected this claim because: the messages were made available to the defense, and the record contains nothing to indicate that defendant himself could not have obtained them earlier by exercising reasonable diligence; thus, there was no suppression. Further, defendant

6

can show no prejudice because defense counsel effectively utilized information from the text messages at trial. Finally, the state asserts the court of appeal correctly found all of the text messages unreviewable because neither party introduced them at trial.

While we agree with the state that the court of appeal did not err in finding that all 635 pages were not subject to review because they were not introduced into evidence, we find the court erred in declining to entertain the arguments and evidence offered in the trial court in litigating the defendant's motions for mistrial and new trial. Cf. La.C.Cr.P. art. 841. Nevertheless, we conclude both lower courts reached the correct result in rejecting this claim.

Though a late disclosure of favorable evidence may give rise to a meritorious *Brady* claim, defendant shows no entitlement to relief on this basis. The defense filed a motion for discovery and inspection of evidence, pursuant to La. C.Cr.P. art. 716, *et seq*., on August 21, 2012. The state responded on October 30, 2012, by providing copies of the police report and photographic evidence and asserting that "[a]ny other evidence may be viewed by appointment" with the district attorney's office. The record also indicates the state gained possession of the text messages from defendant's phone thereafter, on November 8, 2012, over six months before trial.

Defendant cannot show that the trial court abused its discretion in rejecting this *Brady* claim, given the messages were available to the defense through the exercise of reasonable diligence. Defendant's belief that his own phone contained helpful messages was certainly known to him at the time of his arrest, and the defense fails to explain why they waited until the eve of trial to attempt, for the first time, to retrieve and examine the messages. Reasonable diligence would have

7

entailed defense counsel specifying that the text messages were an intended target of discovery and, after receiving the state's response with the open invitation to view any other evidence by appointment, counsel making an appointment to review the messages. Notwithstanding the state's failure to inform the defense when it obtained the phone's contents, defendant could have sought to obtain the messages of which he was aware and of which he claims would have materially bolstered his defense. Instead, he asserts he had an absolute right to discovery of his own conversations, whether or not the state intended to use them at trial, and fails to justify his failure to exercise that right sooner.

Further, setting aside the fact that not all 635 pages were admitted, we note that the messages within those voluminous pages were arranged chronologically from April 12, 2012, through the date of the offenses, July 10, 2012. See R., Vol. 1, p. 89. Among those several pages, just 250 text messages were sent or received on the relevant dates (July 9th and 10th) between defendant and the victim. *Id.* Thus, anyone with knowledge of the defendant's communications, *i.e.*, the defendant himself or his attorney, would have been capable of identifying and assessing the relevant messages within the limited time afforded the defense at the start of trial. Under these circumstances, we agree with the lower courts that nothing was improperly withheld. Cf. *Newman*, 849 F.2d at 161, *supra* (government not obligated to furnish information defense *can obtain with reasonable diligence*).

Defendant also admits that he has since had ample time to review all the messages. Yet he fails to specify any unused messages, let alone show how they would have affected jurors' evaluation of the evidence. Rather, he merely offers a vague assertion that some unused messages would have shown "he had no intent to

8

enter the house or harm anyone" and that the victim concocted her accusations. Because he fails to show that any omitted messages were anything other than cumulative of what defense counsel was permitted to read and argue to jurors, and elicit in cross-examination of the victim, he cannot show that he was denied verdicts worthy of confidence in their absence. *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566.[5]

**Illegal sentences**

Next the parties dispute the legality of defendant's sentences. At issue is the legality of the habitual offender life sentence for defendant, who was 17 years old at the time of the offenses. Defendant was adjudged and punished as a third-felony offender pursuant to La. R.S. 15:529.1(A)(3)(b),[6] which calls for mandatory life imprisonment.

In *Graham*, the Supreme Court held that the Eighth Amendment prohibits a sentence of life without parole for a juvenile offender who has not committed a homicide and requires the government to ensure that such offenders have a meaningful opportunity for release based on demonstrated rehabilitation and

---

[5] The defendant compares his case with *State v. Bright*, pp. 7-8, 02-2793 (La. 5/25/04), 875 So.2d 37, 42-43, in which the defendant was entitled to relief as a result of the suppression of evidence impeaching the sole eyewitness linking the defendant to the crime, and argues he is similarly entitled to relief because, as in *Bright*, nothing but eyewitness accusations established his guilt. In *Bright* the state suppressed the star witness's rap sheet and jurors therefore did not learn that he had a simple burglary conviction and was on parole at the time of the offense and when he identified Bright from a photo lineup. Unlike in *Bright*, however, because defendant here has failed to show that anything in the text messages omitted from trial would have materially undermined the victim, he shows no grounds to disturb his convictions.

[6] La. R.S. 15:529.1(A)(3)(b) provides:

> If the third felony and two prior felonies are defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of [18] at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

maturation. We find two prior decisions from this court, applying *Graham*, partially instructive, though neither dealt with a habitual offender life sentence as in the instant case. In *State ex rel. Morgan v. State*, 15-0100 (La. 10/19/16), ___ So.3d ___, this court found Morgan's 99-year sentence for one count of armed robbery an effective life sentence which violated *Graham.* Prior to *Morgan*, this court held in *State v. Brown*, 12-0872 (La. 5/7/13), 118 So.3d 332, that *Graham* did not preclude imposition of cumulative sentences which in the aggregate match or exceed life expectancy for a juvenile convicted of multiple non-homicide offenses.

In *Brown*, a 16-year-old defendant was convicted of aggravated kidnapping and four counts of armed robbery, all stemming from the same episode, and sentenced to consecutive terms of life without parole and four 10-year terms (also without parole), respectively. *Id.*, 12-0872, p. 3, 118 So.3d at 333-34. The trial court in *Brown* found the life sentence squarely within *Graham*'s purview and therefore deleted the parole prohibition for that term; it also deleted the parole prohibitions for Brown's four remaining 10-year terms so as to effectuate *Graham*'s holding. On review, this court left Brown's actual life sentence with parole eligibility intact, as amended, but reversed the trial court with respect to its amendment of the four 10-year terms and reinstated the parole prohibitions, having concluded that *Graham* does not affect term-of-year sentences imposed for multiple offenses (even if in the aggregate they match or exceed life expectancy). *Id.*, 12-0872, p.15, 118 So.3d at 341. The court found that Brown's consecutive sentences created a "complication" which eliminated any meaningful possibility of parole. *Id.*, 12-0872, p. 14, 118 So.3d at 341. Thus, the Louisiana jurisprudence interpreting *Graham* thus far concludes that *Graham* provides parole eligibility for

10

defendants with: (1) actual life sentences, see *Brown* and see also *State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939 (appropriate remedy for sentences of life without parole under *Graham* is to delete parole eligibility restriction); and (2) a single term-of-years sentence which, standing alone, constitutes an "effective" life sentence. See *Morgan*. Until now, there has been no Louisiana case addressing whether an actual life sentence imposed pursuant to the Habitual Offender Law is distinguishable from other life sentences under *Graham*.

Defendant argues no reason exists—either within *Graham* or this court's decisions—to view his life sentence under the Habitual Offender Law as beyond *Graham*'s reach. He characterizes the instant offenses as a prime example of the transient traits of youth (impulsivity, immaturity, overreacting) which underpin *Graham*'s categorical ban. Defendant also argues that nothing in *Graham* indicates a sentence of life without parole is permissible even for a juvenile non-homicide offender being punished as a recidivist. Rather, defendant maintains his sentence must afford a meaningful opportunity for release, and contends the trial court abused its discretion by ordering his sentences to run consecutively because his offenses arose from one episode.

In response, the state compares the habitual offender life sentence here to the multiple term-of-years sentences meted out in *Brown*, because in both cases the punishments are attributable to the respective defendant's commission of numerous offenses. Citing federal jurisprudence,[7] the state asserts that courts have found *Graham* does not "question the constitutionality of using prior juvenile convictions to enhance the sentence for a crime committed as an adult." Noting the dearth of

---

[7] See generally *United States v. Orona*, 724 F.3d 1297, 1308 (10th Cir. 2013)(citing *United States v. Banks*, 679 F.3d 505 (6th Cir. 2012) and *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir. 2010)).

Louisiana jurisprudence applying *Graham* to habitual offender sentences, the state concedes that the Department of Corrections may treat the defendant's life sentence as parole-eligible in accordance with La. R.S. 15:574.4, which was enacted in response to the *Graham* decision.

The court of appeal majority found the *Graham* issue was not properly before it. It construed defendant's argument as a challenge to the constitutionality of the Habitual Offender Law sentencing provision, and not as a challenge to the legality of the sentence pursuant to *Graham*. See *Green*, 15-0308, p. 13. As Judge McClendon expressed in her dissent, however, this claim is better construed as a *Graham* illegal sentence claim which may be reviewed any time under La. C.Cr.P. art. 882. *Green*, 15-0308, p. 1 (McClendon, J., dissenting).

A review of *Graham*'s underlying rationale reveals no basis upon which to treat a habitual offender life sentence any differently than the sentences in *Shaffer*, *Brown*, and *Morgan*, *supra*, where this court found *Graham* applies. The Supreme Court's decision in *Graham* was founded on the notion that juvenile non-homicide offenders, because of their youth and greater capacity for reform, are significantly less culpable than adults who have committed the same or worse offenses, and therefore deserve different treatment at sentencing. *Graham*, 560 U.S. at 68-69, 130 S.Ct. at 2026-27. In finding life without parole an unconstitutional punishment for a juvenile non-homicide offender, the Court held that states must give such an offender a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" and must not make any judgment at the outset that he will never be fit to rejoin society. *Id.*, 560 U.S. at 74, 130 S.Ct. at 2030.

With these concepts in mind, we find the state fails to distinguish defendant's habitual offender life sentence from an unenhanced life sentence or an

12

effective life sentence. In addition, we find the state erroneously relies on federal jurisprudence holding *Graham* does not foreclose the use of prior convictions for offenses committed by a juvenile to enhance the punishment for a subsequent offense committed *as an adult* (see n.8 *infra*). Here, defendant's single enhanced life sentence as a habitual offender was imposed for an offense committed as a juvenile. Thus, we conclude *Graham* is applicable to defendant's life sentence imposed pursuant to the Habitual Offender Law. Therefore, we hold defendant's enhanced sentence as a third felony offender to life imprisonment without parole for the home invasion committed as a juvenile is illegal under *Graham* and can be corrected at any time pursuant to La. C.Cr.P. art. 882.[8]

Defendant also claims the trial court erred in imposing consecutive terms for his two remaining four-year terms because the three instant offenses occurred during the same episode.

Regarding the imposition of consecutive sentences, La. C.Cr.P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

---

[8]Although an illegal sentence "is primarily restricted to those instances in which the term of the prisoner's sentence is not authorized by the statute or statutes which govern the penalty," *State v. Mead*, 2014-1051, p.3 (La. App. 4 Cir. 4/22/15), 165 So. 3d 1044, 1047, in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the United States Supreme Court reiterated that a substantive rule of constitutional law, such as that introduced in *Graham*, is reviewable at any time.

As explained in *State v. Walker*, 00-3200, p. 1 (La. 10/12/01), 799 So.2d 461, 461–62:

> Although La.C.Cr.P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community.

Here, defendant's conduct transpired within a very short period at one location. Thus, we find the presumption in favor of concurrent sentences applies, and the issue is whether the trial court abused its discretion by imposing consecutive terms. Absent well-articulated reasons from the sentencing court, we decline to say whether it was an abuse of discretion to impose consecutive terms. Thus, we will remand the matter to the trial court to consider whether defendant indeed poses a grave risk to public safety and, at a minimum, to articulate reasons for the consecutive terms.[9]

**Excessive Sentences**

Finally, defendant and the state dispute whether a life sentence, even with parole eligibility under *Graham*, is excessive in this case. After being sentenced as a third offender, defendant filed a motion for reconsideration of sentence on excessiveness grounds, which the trial court denied without reasons.

---

[9] See generally *State v. Baham*, 14-0653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558 (if trial court elects to impose consecutive sentences for single course of conduct, it must articulate its reasons), *writ denied*, 15-0040 (La. 3/24/16), 190 So.3d 1189; see also *State v. Brown*, 15-0096 (La. App. 5 Cir. 9/15/15), 173 So.3d 1262 (same); *State v. Harris*, 11-0626 (La. App. 5 Cir. 11/27/12), 105 So.3d 914 (same); *State v. Blanchard*, 03-0612 (La. App. 5 Cir. 11/12/03), 861 So.2d 657 (same); cf. *State v. Cornejo-Garcia*, 11-0619 (La. App. 5 Cir. 1/24/12), 90 So.3d 458 (if trial court elects to impose consecutive sentences for single course of conduct, it must articulate its reasons, *though failure does not require remand if the record provides an adequate factual basis to support the consecutive sentences*). Because the record does not contain an adequate basis for the trial court's decision here, a remand for articulation of reasons is necessary.

In exceptional circumstances, the statutory minimum or mandatory sentence has been found to violate the constitutional protection against excessive punishment. *State v. Johnson*, 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 677; *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La. 1993). Under Louisiana jurisprudence, a habitual offender sentence is excessive when it imposes a punishment grossly disproportionate to the severity of the offense or constitutes nothing more than a needless infliction of pain and suffering. See *Dorthey*, 623 So.2d at 1280-81 (sentence review is within the judiciary's province and if "the punishment mandated by [La.] R.S. 15:529.1 makes no 'measurable contribution to acceptable goals of punishment' or [] the sentence amount[s] to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime[, the trial judge] has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.") (footnote omitted); see also *State v. Bonanno*, 384 So.2d 355, 357 (La. 1980). But a trial judge may depart downward from the mandatory minimum only if it finds clear and convincing evidence to rebut the presumed constitutionality of the mandatory minimum. *State v. Lindsey*, 99-3256, p. 5 (La. 10/17/00), 770 So.2d 339, 343. In applying this jurisprudence, a reviewing court has the duty to carry out its mandate under La. Const. art. I, § 20 by remanding if the defendant has presented "a substantial possibility that his complaints of an excessive sentence [have] merit." *State v. Wimberly*, 414 So.2d 666, 672 (La. 1982).

Defendant contends that imposition of the statutorily-mandated life sentence serves no worthy legislative goal and that a downward departure is necessary to align the circumstances with the punishment. To rebut the presumption of the constitutionality of the sentence and demonstrate his exceptional nature, defendant

15

asks this court to consider his background, including his youth, family ties, health, employment history, and criminal record, along with the circumstances of the crimes. According to defendant, the record indicates that he had been working the night of the incident; the victim's injuries were superficial; he and the victim have a young son together; he had been on probation for just a few months for the two prior offenses; and he had never served any jail time nor received rehabilitative services before being sentenced here.[10] Defendant asserts that, in the event we hold *Graham* applies to his case, and we do, the lengthy sentence he will be required to serve before becoming parole-eligible is grossly disproportionate to the severity of his offenses. The state counters that defendant failed to show he is an exceptional offender for whom the lengthy sentence is excessive.

As previously mentioned, the evidence shows defendant and K.L. possessed the immature brains that *Graham* and its progeny found so different from adult brains with respect to the critical considerations of culpability and personal control. We find defendant's youth only amplifies the other apparent mitigating factors.[11]

---

[10] Defendant asserts it is relevant to the excessive sentencing inquiry whether he previously served prison time and/or made a concerted effort at rehabilitation, citing *State v. Ross*, 2015-1113 (La. App. 4 Cir. 12/21/16), 207 So. 3d 511. Defendant received probation in April 2012 for the two prior felonies used as predicate offenses for the purpose of the multiple bill and claims he was "barely enrolled in the probation system at the time of this incident," in early July 2012. D. Br. 26. He further argues that "[w]here there has been no graduated sentencing and no shock of real incarceration previously, imposing a life sentence plus [eight] years, even with parole [after 38 years], as a juvenile's first incarceration is particularly traumatic, excessive, and not within the goals of the multiple bill statute[]." *Id.*

[11] Although not in evidence, defendant submitted, in the appendix of his writ application, an affidavit obtained from K.L. while his appeal was pending in the First Circuit Court of Appeal. Briefly, the sworn statement indicates K.L., a juvenile at the time, felt pressure to embellish her account of the incident and harbors regret for her own personal conduct and the harsh outcome of the case. Despite the strong suspicion courts generally have about recantations, see *State v. Clayton*, 27 So. 2d 827, 833 (La. 1982), in this matter, we find the statements within the affidavit from K.L., if properly admitted into evidence and found to be truthful, may be probative regarding sentencing because these statements could be consistent with some of her behavior during trial. For example, Angela Green, the defendant's mother, testified that K.L. told her via text that she "got to play the game" but assured her that she had changed and embellished her story so much that "[t]hey ain't going to be able to put them together," suggesting K.L. believed

16

In addition, penalties in other domestic abuse[12] cases contrast significantly with the outcome here. For example, in *State v. Clanton*, 06-0008 (La. App. 1 Cir. 7/10/06) (unpub'd), <u>writ</u> <u>granted</u> <u>in</u> <u>part</u>, 06-1993 (La. 6/15/07), 958 So.2d 1179 (remanding for sentence clarification), the defendant was convicted of, *inter alia*, two counts of domestic abuse battery and sentenced to just six months in parish jail for each, with the sentences to run *concurrently*, in a case in which the victim testified that during an altercation in which he bit and bruised her, defendant also grabbed and threw their four-year-old son in the apartment they shared. Similarly, in *State v. Vesey*, 07-1029 (La. App. 3 Cir. 9/11/07) (unpub'd), <u>writ</u> <u>denied</u>, 07-2017 (La. 6/6/08), 983 So.2d 916, the defendant was found guilty of, *inter alia*, domestic abuse battery and sentenced to a suspended term of six months in parish jail with 24 months of supervised probation, where the evidence showed that he had kicked and punched his wife in the stomach. The juvenile defendant here was sentenced to life imprisonment, albeit as a recidivist, for circumstances involving substantially the same or similar conduct by the *adult* offenders in *Clanton* and *Vesey*.

---

the jury would not be able to return guilty verdicts. Ultimately, because the affidavit is not in evidence, we express no opinion regarding its probative value.

[12] Notwithstanding the verdicts here (home invasion, simple robbery, second degree battery), the state did not dispute defendant's use of the term "domestic abuse" to describe the evidence, and we find no reasonable basis to dispute that the circumstances in fact closely resemble domestic abuse, given defendant and K.L. were romantically involved, had a child together, and the impetus for defendant's outrage was his adolescent jealously over K.L.'s involvement with another young man.

Moreover, though defendant was punished as a third offender and sentenced to life for *home invasion*, we find no reason to view that count and its sentence as meaningfully isolated from what transpired after he pushed his way into the apartment. <u>Compare</u> La. R.S. 14:35.3 (domestic abuse battery is "the intentional use of force or violence committed by one household member upon the person of another household member without the consent of the victim," which is punishable as a misdemeanor for a first offense by between 30 days and six months in jail with at least 48 hours without parole) *with* La. R.S. 14:34.1 (second degree battery is a battery committed when the defendant intentionally inflicts serious bodily injury; punishable as a felony with a sentence of up to eight years at hard labor).

Considering the totality of the circumstances, including defendant's youth, and the relative harshness of defendant's sentences as compared to other defendants convicted of harming their romantic partners in domestic disputes, we conclude defendant has presented "a substantial possibility that his complaints of an excessive sentence [have] merit," see *Wimberly*, 414 So.2d at 672, and thereby triggered this court's duty under La. Const. art. I, § 20 to remand for a hearing at which defendant will be permitted to present mitigating evidence to show that his life sentence is excessive and for re-sentencing in accord with the prohibition against excessive punishment. See *Bonanno*, 384 So.2d at 357; cf. *State v. Mosby*, 14-2704 (La. 11/20/15), 180 So.3d 1274 (30-year habitual offender sentence for 72-year-old, non-violent offender deemed "grossly out of proportion to the severity" of the offense and therefore unconstitutionally excessive).

## DECREE

For the reasons expressed herein, we hold *Graham* is applicable to a defendant who is adjudicated and sentenced under the Habitual Offender Law to life without parole for a non-homicide offense committed as a juvenile. Accordingly, we affirm defendant's convictions and amend his life sentence under the Habitual Offender Law to delete the restriction on parole eligibility and direct the Department of Corrections to revise defendant's prison masters according to the criteria in La. R.S. 15:574.4(D) to reflect an eligibility date for consideration by the Board of Parole. Further, we remand the matter to the trial court to reconsider the corrected sentence after first conducting an evidentiary hearing to allow defendant the opportunity to establish mitigating circumstances under *State v. Dorthey*, 623 So. 2d 1276 (1993), and *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672, and to articulate reasons if consecutive terms are imposed.

18

**CONVICTIONS AFFIRMED; SENTENCE AMENDED; AND REMANDED.**

**SUPREME COURT OF LOUISIANA**

**NO. 2016-K-0107**

**STATE OF LOUISIANA**

**VERSUS**

**THAYER GREEN**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT PARISH OF EAST BATON ROUGE**

**JOHNSON, C.J.** dissents in part and assigns reasons.

I respectfully dissent from the majority's rejection of defendant's *Brady* claim.

The underlying story of this case involves two impetuous teenagers, the defendant and K.L., who had a previous romantic relationship and shared a child together. The two were immature teens, and their relationship was apparently up and down and consisted of frequent arguing and manipulation. On the night of July 10, 2012, defendant drove to K.L.'s residence only to find her with another male in the parking lot. Defendant entered K.L.'s apartment where a struggle ensued and defendant left the apartment taking a cell phone. Defendant was eventually charged with home invasion, armed robbery and aggravated battery.

On the second day of defendant's trial, the state disclosed for the first time that it had seized defendant's cell phone months earlier and had downloaded all of the text messages. The state then disclosed to the defendant 635 pages of text messages which had been extracted from defendant's cell phone. Defendant unsuccessfully moved for a mistrial (and later a new trial) based on the late disclosure of the text messages. The jury eventually found defendant guilty on the home invasion charge, and returned responsive verdicts of simply robbery and second degree battery.

1

In my view, the state's late disclosure of the text messages constitutes a clear *Brady* violation. The state's suppression of evidence favorable to the accused violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The late disclosure of such evidence may also require a reversal if the timing significantly impacted the defendant's opportunity to effectively utilize the material. *State v. Kemp*, 00-2228 (La. 10/15/02), 828 So. 2d 540, 545-46. There is no doubt the text messages contained exculpatory evidence, specifically related to defendant's guilt as to the home invasion charge, and thus were required to be disclosed to the defendant pursuant to *Brady*. Moreover, because these messages were not disclosed until the second day of trial, defendant was not able to effectively use this evidence in his defense, requiring a reversal of his conviction.

The narrative of what happened on July 10, 2012, is told through the text messages between defendant and K.L. The text messages suggest K.L. orchestrated the events of that night by toying with defendant and inviting him to her residence when she was there with another boyfriend. K.L. told police that she advised defendant she did not want him to come over or to see him, but the text messages sent by K.L. show otherwise. The texts establish K.L.'s pattern of manipulation of the defendant, wherein she repeatedly enticed defendant to come over to her residence. K.L.'s credibility was called into question when she testified that despite what was said in the text messages, she did not really want the defendant to come over, that she was just being sarcastic and joking with him, and she was playing with his mind to see what he was going to do.

These text messages were exculpatory on the home invasion charge because they demonstrate K.L. wanted and invited defendant to come to her residence on the night of July 10, 2012. The messages were central to the defense that there was no "unauthorized" home invasion because K.L. invited defendant to her residence.

2

The state's failure to timely disclose the exculpatory evidence impacted the fundamental fairness of the prosecution as it denied defendant his right to a fair trial and due process of law. The defendant did not have access to the texts while conducting *voir dire*, an essential element of trial, and was further prevented from adequately preparing his defense, particularly as to the home invasion count. The texts confirm the defendant was invited to K.L.'s residence and support the physical evidence that there was no forced entry. Had the defendant been given sufficient time to prepare his defense based on the texts obtained by the state, he could have fully impeached K.L.'s testimony, which was critical to the state's case.

Further, I disagree with the majority's finding that the district court did not abuse its discretion in rejecting the *Brady* claim because the text messages were available to the defense through the exercise of reasonable diligence. In this case, defendant specifically requested impeachment and exculpatory evidence from the State on August 21, 2012, but was never informed when the texts were obtained. Additionally, the defendant was actively looking for his phone, knowing that it held crucial evidence for his defense. The defense was never told that the state had possession of defendant's phone or that a search warrant had been secured for the phone and access to the information on the phone.

The text messages contained concrete exculpatory evidence, specifically relating to the home invasion charge. The late disclosure of the text messages significantly impacted the defendant's opportunity to utilize the material and led directly to defendant's conviction. For these reasons, I would vacate defendant's conviction and remand the matter for a new trial. *See Brady* and *Kemp*, *supra*.

**SUPREME COURT OF LOUISIANA**

**No. 2016-K-0107**

**STATE OF LOUISIANA**

**VERSUS**

**THAYER GREEN**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**Hughes, J., dissents.**

I respectfully dissent for the reasons given by Johnson, C.J.