Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 53,596-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

JAMES ANTHONY SANTOS                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 360245

Honorable Craig Owen Marcotte, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Annette Fuller Roach


JAMES EDWARD STEWART, SR.                Counsel for Appellee
District Attorney


TOMMY JAN JOHNSON
WILLIAM C. GASKINS
ALEX L. PORUBSKY
Assistant District Attorneys


* * * * *


Before PITMAN, STEPHENS, and BODDIE *(Ad Hoc)*, JJ.

**BODDIE (*Ad Hoc*), J.**

James Anthony Santos, who was convicted of simple robbery and aggravated battery, claimed in a motion for new trial that the State's untimely disclosure of his cell phone records violated his rights under *Brady v. Maryland*. His motion was denied. Santos was subsequently adjudicated a second-felony offender and sentenced to concurrent 12-year hard labor sentences. Santos has appealed the denial of his motion for new trial.

We affirm Santos's convictions and sentences.

## FACTS

On the evening of July 20, 2018, Derick Bendow drove his car to the Caddo Parish home of his friend, Annie Smith, to visit with her while waiting for his girlfriend. Smith left her home to obtain a drink and cigarettes. While Bendow stood outside of Smith's home, he noticed a car travel down Smith's dead-end street before turning around. Bendow approached the car when he heard a familiar voice call his name from within. Suddenly, two men jumped out of the car. One man was black and not wearing a mask. The other man was white, wearing a mask, and armed with a handgun. Bendow was struck several times with the handgun and ordered to the ground. His wallet, cellphone, and car keys were taken from him after he was told to empty his pockets. Bendow's hands were later restrained behind his back with duct tape. The pair of assailants remained with Bendow as the car was driven away.

When Smith returned fifteen minutes later, the black man told his partner to pull his mask back down. When Bendow turned around and saw that the white man had his mask on top of his head, he saw part of his face

and recognized him as the defendant, James Anthony Santos.  Bendow knew Santos through Santos's father and uncle.

Smith recalled that a man with a light complexion pointed a gun at her and ordered her to the ground in a ditch near her mailbox.  He asked her if she knew Bendow.  Smith described the other man as having a dark complexion, but she never saw his face or heard him say anything.  She could not see the face of the gunman, but thought he was white or possibly Hispanic based on his manner of speaking.

When Bendow heard one assailant say to the other that they were going to put him in the trunk of his car, he broke free and ran away.  Santos fired several shots at the fleeing Bendow, with one bullet scraping the top of Bendow's head.  After Santos finished firing, Smith heard him say, "Now we got to kill him."  The two men then walked away.

On July 31, 2018, Detective Davis Romero of the Caddo Parish Sheriff's Office obtained a search warrant for AT&T Wireless's records for Santos's cell phone number between the dates of July 1 and July 30, 2018.  Among the information sought in the search warrant were cell tower locations and historical handset location information regarding Santos's calls, text messages, and mobile data.

Santos, who was found and arrested in Rhode Island, was charged by an amended bill of information with armed robbery, attempted second degree kidnapping, and attempted second degree murder.

On August 22, 2018, Santos's appointed counsel filed a motion for discovery and inspection.  On September 20, 2018, Santos filed a *pro se* request for a bill of particulars and a motion to proceed in proper person.

Santos's motion was granted and Santos represented himself until this appeal was taken.

During a hearing held on December 6, 2018, Santos filed motions for a speedy trial and for preliminary examination transcripts. The trial court granted the motion for the transcripts.

The matter was set for a jury trial on April 22, 2019. When the trial date arrived, the State was represented in this matter by a different Assistant District Attorney ("ADA"). Santos told the trial court at that time that he had not received his cell phone location data that his stand-by counsel had sought through a subpoena. Santos added that the information had been requested in a search warrant. When the trial court asked the ADA if the State had the requested information, the ADA responded that he was not aware of it. When the trial court asked the ADA if the State had ever requested it, the ADA replied that as far as he knew the prosecutors had not, but he would have an answer in two days. At the State's request, the jury trial was reset for April 24.

When the matter was next heard on April 24, Santos's stand-by counsel informed the trial court that Santos had not subpoenaed his own phone records. The ADA told the trial court that he learned from a detective that the cell phone records had been subpoenaed, but the detective could not make sense of the GPS data and was looking to see if he still had the subpoenaed documents. Because the ADA stated that he was not planning to use the GPS data, the trial court asked the stand-by counsel to help Santos issue a subpoena. When Santos reurged his motion for a speedy trial, the trial court reminded him that he could not file a motion for a speedy trial while he was still asking the State to produce documents. After the trial

3

court asked Santos if he wanted the "stuff," Santos answered that he did not want it. The trial was reset for May 20 with no additional discovery. Santos filed a motion to quash the bill of information, which the trial court denied. On April 30, 2019, Santos filed a motion to withdraw all unsatisfied motions and requests.

On June 27, 2019, this court granted Santos's supervisory writ and reversed the trial court's denial of his motion to quash without holding a contradictory hearing. A hearing on the motion to quash was held on July 8, 2019. The motion to quash was denied. Santos agreed that he had withdrawn all of his motions for discovery and was ready for trial. The trial court granted his motion for a speedy trial.

Jury selection began on August 5, 2019. The following day prior to opening statements, the ADA informed the trial court that the Caddo Parish Sheriff's Office ("CPSO") had provided him with phone records related to GPS locations linked to Santos's phone. The lead detective who was involved in the investigation had moved to Wyoming a few months earlier. The ADA, who had some of the records printed and made available to Santos, believed there were additional pages that would be forthcoming. Santos objected to the phone records and asked that they be excluded. The ADA replied that he had no intention of using the phone records when presenting his case-in-chief. The ADA also stated that the phone records would be filed in the record in the event they included any exculpatory evidence or Santos wanted to review them. Shortly thereafter, the ADA told the court that the additional documents that he had been expecting numbered more than six hundred pages.

4

A supplemental discovery response from the State was filed into the record on August 6. Attached were AT&T records which detailed the location of Santos's cell phone from July 3, 2018 to July 19, 2019, as well as maps showing the location of the phone on July 21, 2018.[1]

After Derick Bendow and Annie Smith testified on behalf of the prosecution, the State told the trial court that in addition to the phone records it had earlier placed in the record, it had received six hundred pages of phone records on a disk.[2] When the trial court asked the ADA why he was giving that many documents to Santos on the day of trial, he responded that Santos withdrew all pending motions when he requested a speedy trial. He added that when he thought the records could be something that Santos needed to see, he asked the CPSO to look for them, and the CPSO had just found them. Santos complained that he did not have enough time to review the records. Santos then told the trial court that he did not want to examine the records on the disk for his own use. The trial court explained to Santos that he had a right to look at the records. The court also offered to break until the next day to give him time to examine them, but Santos declined. The following exchange then occurred:

> The Court: Do you want to waive any and all rights to look at these 600 pages to determine whether or not you want to use them in your case, or do you want to waive the right to look at these 600 documents?
>
> Santos: I'll waive the right to look at them.
>
> The Court: You understand they may be helpful for you?
>
> Santos: Yes, sir, I understand.

---

[1] These records were dated August 4, 2018.

[2] The remaining witnesses called by the State were a crime scene investigator from the CPSO and the son of Santos's girlfriend. The son, who lived with Santos in July of 2018, testified regarding when Santos was at home on July 20 and that Santos asked him after July 20 if he knew anyone who wanted to buy a revolver.

The Court: But you want to waive any and all rights to look at these 600 documents?

Santos: Yes, sir.

The Court: And want to go forward and continue with this case today?

Santos: Yes, sir.

The Court: Is that correct?

Santos: Yes, sir.

The Court: And you've had a chance to discuss this with stand-by counsel Ms. Andrepont?

Santos: Yes, sir.

Ultimately, the jury found Santos guilty of the responsive verdicts of simple robbery and aggravated battery. He was found not guilty of attempted second degree kidnapping.

When Santos appeared for sentencing on August 26, 2019, he filed a motion for new trial in which he argued that following the trial, he discovered that the State had withheld exculpatory evidence regarding witness location, forensic reports, and GPS location which did not place him at the scene of the crime. He also claimed that he would have called an expert witness to testify that the cell phone records showed he was at a location other than the crime scene. He asserted that he was prejudiced by the State's late and partial disclosure of the cell phone records. He also claimed the State did not tender the records showing his cell phone location on July 20.

A hearing on the motion for new trial was held on August 26, 2019. Santos told the trial court that although he waived any objection at trial, he learned after looking at the GPS data that he was ten to fifteen miles away

from the crime when it happened. The State responded that although Santos mentioned the phone records in court in April, he withdrew all outstanding motions a few days later. The State also added that their expert who looked at the phone records showed they bounced off the tower in the direction of the crime scene. The court denied the motion for new trial.

Santos also filed a motion on August 26 for the State to provide him with a complete discovery report. He complained in his motion about the State's delay in providing him with incomplete reports relating to his cell phone location. He believed the State possessed exculpatory evidence regarding his phone location on July 20.

On August 26, 2019, the State filed a second-felony habitual offender bill of information. The predicate offense was illegal possession of stolen things, to which Santos pled guilty on March 28, 2017. For that crime, he had received a sentence of five years at hard labor, which was suspended, with three years of probation.

On September 9, 2019, the State responded to Santos's post-trial request for documents and tendered the 2018 search warrant and a printed copy of the digital file.[3]

On September 16, 2019, Santos pled guilty to being a second-felony habitual offender to simple robbery and aggravated battery. He received an agreed-upon sentence of 12 years at hard labor on each conviction, without benefit of probation or suspension of sentence. Each 12-year sentence was to be served concurrently with any and all other sentences. On October 15,

---

[3] The record does not contain either the disk or its contents.

2019, Santos filed a motion to reconsider sentence. The motion to reconsider was denied.

## DISCUSSION

Santos is represented by counsel on appeal and did not file a *pro se* brief. His only assignment of error is that the trial court erred in denying his motion for new trial which was based on the State's untimely disclosure of exculpatory evidence material to his defense in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Santos maintains that despite his repeated requests for the documents, the State did not timely disclose cellphone GPS location data that it had within its control for a year before providing it to him during trial. He asserts the records should have been given to him at the earliest opportunity instead of during the middle of the trial when he was not in a position to analyze them. Under the circumstances, the late disclosure was effectively not a disclosure at all. He claims that upon reviewing the records after trial, he learned they contained information placing him miles away from the area when the crimes occurred. He maintains that if he had been presented with the records earlier, he could have subpoenaed witnesses to testify about the location of his phone.

Santos contends that he was forced to choose between his right to discovery and his right to a speedy trial when he sought these phone records in December of 2018 and in April of 2019, and when he was presented with them in the middle of the trial. Santos argues that any waivers that he made were not knowing and intelligent, and were made without him understanding the consequences of his waiver. Santos further argues that the untimely disclosure denied him a fair trial and the right to present a defense. Finally,

he asserts that the record should be supplemented with the disk containing the cell phone data in its entirety so this court can determine if the AT&T report contained exculpatory evidence.

The State counters that the records concerned Santos's cell phone, he knew the records existed, and he certainly knew the location of his cell phone. The State points out that the record reflects that on April 24, 2019, his stand-by counsel agreed to help him issue a subpoena for the records. The State further argues that *Brady* did not obligate it to produce for Santos evidence or information already known to him, or that he could have obtained from other sources by exercising reasonable diligence. The State maintains that Santos had knowledge of the records and even declared that he was going to obtain them, yet he failed to show that he exercised due diligence in attempting to obtain them. Finally, because the records were not *Brady* material, the trial court did not err in denying the motion for new trial even though the court's reasoning was based upon Santos's waiver.

Under the aforementioned United States Supreme Court's decision in *Brady*, *supra*, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. *Giglio v. U.S.*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S. Ct.

9

3375, 3383, 87 L. Ed. 2d 481 (1985). *See also, State v. Rosiere*, 488 So. 2d 965 (La. 1986).

The State's constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investigation and prepare a defense for trial as the State is not obligated under *Brady* or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence. *State v. Harper*, 10-0356 (La. 11/30/10), 53 So. 3d 1263; *State v. Kenner*, 05-1052 (La. 12/16/05), 917 So. 2d 1081 (citing *U.S. v. Newman*, 849 F. 2d 156, 161 (5th Cir. 1988)). It follows, therefore, "'[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.'" *State v. Hobley*, 98-2460, p. 25 n. 10 (La. 12/15/99), 752 So. 2d 771, 786 (quoting *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998)), *cert. denied*, 531 U.S. 839, 121 S. Ct. 102, 148 L. Ed. 2d 61 (2000). A defendant shows no entitlement to relief if the information was available to him through other means by the exercise of reasonable diligence. *State v. Green*, 16-0107 (La. 6/29/17), 225 So. 3d 1033.

As the United States Fifth Circuit Court of Appeals explained in *U.S. v. Brown*, 628 F. 2d 471, 473 (5th Cir. 1980):

> Regardless of whether the request was specific or general, and regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.
>
> The constitutional requirement of due process mandates that the defendant have a right to a fair trial. The prosecutor's duty not

to suppress material information favorable to defendant flows from his office as representative of the Government's interest in and due process obligation to justice. Truth, justice, and the American way do not, however, require the Government to discover and develop the defendant's entire defense. . . . In no way can information known and available to the defendant be said to have been suppressed by the Government.

Citations and footnotes omitted.

Moreover, the State has, "of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor[.]" *U.S. v. Agurs*, 427 U.S. 97, 106, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342 (1976). There is also no corresponding "constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795, 92 S. Ct. 2562, 2568, 33 L. Ed. 2d 706 (1972); *Agurs*, *supra*.

There was no *Brady* violation in this matter even though the State failed to turn over the cell phone records to Santos until the day of trial. Santos was aware of the existence of these records no later than April 22, 2019. Moreover, these records concerned the location of Santos's own phone. Nobody was in a better position than Santos to know the whereabouts of his phone at the time of the crime. If Santos thought his phone records could essentially establish his alibi, then he could have obtained them by exercising reasonable diligence. In fact, the trial court asked stand-by counsel on April 24 to help Santos issue a subpoena for the records. Clearly, Santos chose not to seek the records. Thus, it is clear from reviewing the record, that this evidence was neither exculpatory, nor concealed, nor can it be construed to be "newly discovered."

**CONCLUSION**

11

For the foregoing reasons, we conclude that the trial court properly denied Santos's motion for new trial which was based on an alleged *Brady* violation.  His assignment of error is completely devoid of merit.  Therefore, Santos's convictions and sentences are AFFIRMED.